# EXHIBIT 2

Saput Motion to Suppress Evidence and Terminate Proceedings

Defendants' Motion to Dismiss

*Mynor Abdiel Tun-Cos, et al. v. B. Perrotte, et al.*, No. 1:17-cv-943

Simon Y. Sandoval-Moshenberg (EOIR ID No. QB725995)  NON-DETAINED
Nicholas Marritz (EOIR ID No. UX035069)
**Legal Aid Justice Center**
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041

Daniel T. Grant (EOIR ID No. VV838414), Daniel E. Johnson,
Mark H. Lynch, José E. Arvelo & Brandon H. Johnson
**Covington & Burling LLP**
850 Tenth Street, NW
Washington, DC 20001

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
ARLINGTON, VIRGINIA

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| PAJARITO SAPUT, Jose Jose ) | |
| ) File No: | |
| ) | |
| In removal proceedings ) | |
| ) | |

Immigration Judge Emmet Soper       Next Hearing: Jan. 24, 2018, 9:00 a.m.

**RESPONDENTS' MOTION TO SUPPRESS EVIDENCE
AND TERMINATE PROCEEDINGS**

Respondents Mr. Jose Jose Pajarito Saput and Mr. Mynor Abdiel Tun-Cos ("Respondents") hereby move for the suppression and exclusion of all evidence, physical and testimonial, obtained or derived from or through or as a result of U.S. Immigration and Customs Enforcement's ("ICE") unlawful seizure, interrogation, and detention of Respondents on February 17, 2017.

Specifically, Respondents move for the suppression and exclusion of the following:

1. Respondents' respective ICE Forms I-213 and any other statements or forms completed from information that may have been given by Respondents to ICE agents or obtained or acquired from Respondents by ICE agents.

2. Any and all other property, papers, information, or testimony pertaining to Respondents, obtained or taken from them on February 17, 2017 or at any time thereafter, by ICE.

3. Any and all other property, papers, information, or testimony pertaining to Respondents obtained as the fruit of the illegal seizure, interrogation, or detention that occurred on February 17, 2017.

Without that evidence, the government will be unable to satisfy its burden to establish Respondents' alienage by clear and convincing evidence. *Matter of Cervantes*, 21 I. & N. Dec. 351, 354 (BIA 1996) ("The burden of proof in deportation proceedings does not shift to the alien to show time, place, and manner of entry under section 291 of the Act, until after the respondent's alienage has been established by clear, unequivocal, and convincing evidence." (citing *Woodby v. INS*, 385 U.S. 276 (1966), and *Murphy v. INS*, 54 F.3d 605 (9th Cir. 1995))). Alternatively, these proceedings should be terminated due to ICE's violation of several of its regulations that set legal standards which agents must follow while carrying out enforcement

activities. Accordingly, Respondents respectfully request that the Court terminate these removal proceedings.

## MEMORANDUM OF LAW

### INTRODUCTION

Respondents move for suppression of evidence and termination of these removal proceedings because the evidence that the government intends to use against them was obtained through egregious violations of the Fourth Amendment as well as violations of ICE's internal regulations governing its agents' conduct during enforcement operations. ICE agents, purportedly searching for an individual who looks nothing like Respondents and is much younger, seized Respondents with no reasonable suspicion whatsoever that Respondents had committed any criminal act or had violated any law, nor with any legitimate reason to believe that Respondents had committed an offense against the United States or were aliens illegally in the United States. *See* 8 C.F.R. § 287.8(c)(2). The ICE agents had no reasonable suspicion to justify a seizure of Respondents, and no reasonable suspicion to interrogate them. Instead, based only on Respondents' race, ethnicity, or perceived national origin, the ICE agents "boxed in" Respondents' car with their SUV, surrounded Respondents' car, banged on the car windows, ordered Respondents to produce identification, and aggressively questioned Respondents. The ICE agents then entered and searched Respondents' home without a warrant and without consent. The ICE agents' conduct therefore was an egregious violation of the Fourth Amendment, and the Court should suppress any evidence obtained as a result of the unlawful and unreasonable seizure. Alternatively, the Court should terminate these proceedings as the result of ICE's violation of its own enforcement regulations.

2

## STATEMENT OF FACTS

Early in the morning of February 17, 2017, Respondents exited their apartment building in Fairmont Gardens in Annandale, Virginia to go to work, following their customary morning workday routine. Exhibit A, at ¶ 2; Exhibit B, at ¶ 2. Along with two other individuals, Respondents entered Mr. Tun-Cos's car in the Fairmont Gardens parking lot to drive to work. Exhibit A, at ¶ 2; Exhibit B, at ¶ 2. All four individuals appeared to be of Latino race or ethnicity. Exhibit A, at ¶ 3; Exhibit B, at ¶ 23. None of the individuals were engaged in any sort of criminal activity whatsoever. Exhibit A, at ¶ 4; Exhibit B, at ¶ 4.

As soon as Mr. Tun-Cos began to drive his car out of the parking space, an unmarked black SUV pulled up suddenly and blocked the car from moving. Exhibit A, at ¶ 5; Exhibit B, at ¶ 5. It was an ICE vehicle occupied by four ICE agents. At this point, and for the rest of the encounter, Respondents reasonably did not feel free to leave or to refuse the ICE agents' instructions. Exhibit A, at ¶ 5; Exhibit B, at ¶ 5. Immediately after blocking Mr. Tun-Cos's car, several ICE agents, each with a gun visible on his waistband, jumped out of the SUV and surrounded the car. Exhibit A, at ¶ 6; Exhibit B, at ¶ 6. As the ICE agents surrounded the car, one or more of the agents banged on the car windows and loudly instructed the passengers to lower the windows. Exhibit A, at ¶ 6; Exhibit B, at ¶ 6.

Despite the fact that the ICE agents had no reasonable suspicion that any of the four occupants of the car had violated the immigration laws of the United States or committed any other violation of U.S. law, the ICE agents demanded that each of the occupants (including Respondents) produce identification. Exhibit A, at ¶ 7; Exhibit B, at ¶ 7. Respondents, reasonably believing they had no other choice, complied with the ICE agents' request by providing the identification that they had in their wallets. Exhibit A, at ¶ 7; Exhibit B, at ¶ 7. The ICE agents ordered the four occupants out of the car. Exhibit A, at ¶ 7; Exhibit B, at ¶ 7.

3

One ICE agent stayed with Mr. Tun-Cos as he parked the car. Exhibit A, at ¶ 8. Another ICE agent returned to the unmarked ICE SUV with the men's identification. Exhibit A, at ¶ 8; Exhibit B, at ¶ 8.

Two other ICE agents said to Mr. Pajarito Saput, "Let's go to your apartment," and directed him to the apartment building. Exhibit B, at ¶ 9. Mr. Pajarito Saput reasonably believed that he had no choice but to obey the ICE agents' command. Upon arriving at the apartment door, an ICE agent instructed Mr. Pajarito Saput to open the door and said, "We're going to go inside and have a chat." *Id.* Mr. Pajarito Saput reasonably believed that he had no choice but to obey the agent's command, and opened the door to the apartment where Respondents resided. At no point did Mr. Pajarito Saput or any other individual give consent for the ICE agents to enter the home. *Id.* Once in the apartment, one ICE agent stood near the apartment entrance. Another ICE agent went deeper into Respondents' apartment without their consent. *Id.*

Mr. Tun-Cos and the ICE agent who stayed with him while he parked his car made their way to the apartment where Respondents resided. *See* Exhibit A, at ¶ 10. At this point, an ICE agent showed Mr. Tun-Cos photos of two young men and asked if he knew them. *Id.* Mr. Tun-Cos responded truthfully that he was familiar with the two men and that they used to live in the apartment, but that they had moved out about five years ago. *Id.* at ¶ 11. Mr. Tun-Cos told the ICE agent that the two men are brothers named Wilber and Carmelino Houx-Hernández (the "Houx-Hernández brothers"), and that Mr. Tun-Cos had kicked them out of the apartment approximately five years ago because of their drinking. *Id.* The ICE agent asked Mr. Tun-Cos if he knew the Houx-Hernández brothers' current contact information, and Mr. Tun-Cos responded truthfully that he did not. *Id.*, at ¶ 12. The same ICE agent told Mr. Tun-Cos that the Houx-Hernández brothers were "in trouble with the police" but gave no further reasons why ICE was

4

looking for them. Exhibit A, at ¶ 15; Exhibit B, at ¶ 10. Neither of the Respondents resemble either of the Houx-Hernández brothers other than that they are all men of Latino race or ethnicity. Exhibit A, at ¶ 13.

Despite Respondents' cooperation and the fact that they clearly were not the individuals for whom the ICE agents may have been looking, the ICE agents arrested Respondents and their companions. The ICE agents then frisked the men, handcuffed them, and took them to an unmarked white van. Exhibit A, at ¶ 16; Exhibit B, at ¶ 11. Respondents were then taken in that van to an ICE facility in a warehouse park near Lorton, Virginia, where they were held for the entire day. Exhibit A, at ¶ 17; Exhibit B, at ¶ 12. In the early evening, government agents drove Respondents to an ICE office in Fairfax, Virginia and released Respondents with instructions to return for periodic check-ins with ICE officials. Exhibit A, at ¶ 17; Exhibit B, at ¶ 12.

## LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs when "'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *INS v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see also United States v. Black*, 707 F.3d 531, 537 (4th Cir. 2013). The Fourth Amendment requires immigration agents to have reasonable suspicion of the alienage of an individual before seizing that individual. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). An individual's apparent race, ethnicity, or national origin does not give the government reasonable suspicion of alienage. *See id.* at 885–87.

"[T]he exclusionary rule applies in removal proceedings where the challenged evidence has been obtained by 'egregious violations of [the] Fourth Amendment . . . that might transgress

5

notions of fundamental fairness and undermine the probative value of the evidence obtained.'" *Yanez-Marquez v. Lynch*, 789 F.3d 434, 450 (4th Cir. 2015) (alteration in original) (quoting *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050–51 (1984) (O'Connor, J.)). To obtain an evidentiary hearing, the respondent need only present a prima facie case showing that the seizure violated the Fourth Amendment and that the violation was egregious. *Id.* at 450–51 (citing *Maldonado v. Holder*, 763 F.3d 155, 162 (2d Cir. 2014)); *see also Matter of Barcenas*, 19 I&N Dec. 609, 611 (BIA 1988). At this stage, courts must accept as true the affidavits and supporting evidence submitted by the respondent. *See Santos v. Holder*, 486 F. App'x 918, 920 (2d Cir. 2012). Once the respondent presents a prima facie case, "the burden of proof shifts to the government to demonstrate why the I[mmigration] J[udge] should admit the challenged evidence." *Yanez-Marquez*, 789 F.3d at 451.

The Fourth Circuit applies a "totality of the circumstances test" to determine if a Fourth Amendment violation is egregious. *Id.* at 460. This "flexible" approach "allows the court to examine all of the facts it deems relevant to the egregiousness inquiry and focuses on the unreasonableness of the conduct of the law enforcement officers." *Id.* Although not an exhaustive list, the following factors should be considered: (1) whether the Fourth Amendment violation was intentional; (2) whether the violation was unreasonable in addition to being illegal; (3) whether there were threats, coercion, physical abuse, promises, or an unreasonable show of force by the law enforcement officers; (4) whether there was no articulable suspicion for the search or seizure whatsoever; (5) where, when, and how the search, seizure, or questioning took place; (6) whether the search, seizure, or questioning was particularly lengthy; (7) whether the law enforcement officers procured an arrest or search warrant; (8) any unique characteristics of the alien involved; and (9) whether the violation was based on racial considerations. *Id.* at 460–

61 (citations omitted). A Fourth Amendment violation need not satisfy all of these factors to be deemed egregious. *See Santos*, 486 F. App'x at 920 (holding that an individual established a *prima facie* case of egregiousness solely because he was pulled over due to his race).

## ARGUMENT

The ICE agents' stop of Respondents constituted a seizure under the Fourth Amendment. This seizure was an egregious violation of the Fourth Amendment, and the Court should suppress any evidence obtained as a result of such seizure. Not only did the ICE agents seize Respondents with no reasonable suspicion that they had violated any law, but the seizure was based on Respondents' race, ethnicity, or perceived national origin. Moreover, the ICE agents entered and searched Respondents' residence without consent, further compounding the egregiousness of the stop. In addition, the ICE agents' actions violated the agency's own regulations governing its agents' conduct when conducting enforcement actions, independently warranting termination of these proceedings.

### I. The ICE Agents' Stop and Detention of Respondents Constituted a Seizure under the Fourth Amendment.

A seizure is deemed to have occurred for Fourth Amendment purposes "when, in view of the totality of the circumstances surrounding the stop, a reasonable person would not feel free to leave or otherwise terminate the encounter." *Delgado*, 466 U.S. at 215; *see also United States v. Jones*, 678 F.3d 293, 300–02 (4th Cir. 2012); *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). In *Jones,* police officers physically blocked Jones's car from leaving, quickly approached the car, and asked Jones to lift his shirt and consent to a pat down. *Id.* at 305. The Fourth Circuit held that, given the totality of the circumstances, a reasonable person would not feel free to leave. *Id.*

Similarly, here, it is clear that a reasonable person in Respondents' position would not feel free to leave. As soon as Mr. Tun-Cos's car began to pull out of its parking space in Fairmont Gardens, the ICE agents' unmarked black SUV pulled up and blocked the car from moving. Exhibit A, at ¶ 5; Exhibit B, at ¶ 5. Immediately after blocking Mr. Tun-Cos's car, several ICE agents, each with a gun visible on his waistband, jumped out of the SUV and surrounded the car. Exhibit A, at ¶ 6; Exhibit B, at ¶ 6. As the ICE agents surrounded the car, one or more of the agents banged on the car windows and loudly instructed the passengers to lower the windows. Exhibit A, at ¶ 6; Exhibit B, at ¶ 6. Respondents reasonably believed they were not free to leave. *See Delgado*, 466 U.S. at 215. Respondents therefore were seized.

## II. The ICE Agents' Unlawful Seizure of Respondents Was Based on Race, Ethnicity, or Perceived National Origin, Which Demonstrates the Egregiousness of the Seizure.

The Fourth Amendment requires that ICE agents have either a warrant or a reasonable, articulable suspicion that an individual violated the immigration laws of the United States *before* seizing that individual. *See Brignoni-Ponce*, 422 U.S. at 884. Courts "view the totality of the circumstances to determine whether the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Officers must do more than simply "patch[] together a set of innocent, suspicion-free facts . . . to establish reasonable suspicion." *Black*, 707 F.3d at 539. These constitutional standards also form the basis for various federal regulations which govern ICE agents' activities in the field, including 8 C.F.R. § 278.8(c)(2) and 8 C.F.R. § 287.3(a).

Here, the ICE agents' warrantless seizure of Respondents was unreasonable and lacked any articulable suspicion whatsoever. Because Respondents were engaging in no suspicious or criminal behavior when the ICE agents seized them, the only plausible (and illegal) reason for

8

seizing Respondents was their race, ethnicity, or perceived national origin. *See Sanchez v. Sessions*, __ F.3d __, 2017 WL 3723238, at *6–7 (9th Cir. Aug. 30, 2017). Such a seizure is in and of itself an egregious violation of the Fourth Amendment. *See, e.g., Santos*, 486 F. App'x at 920; *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 235 (2d Cir. 2006); *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1449–51 (9th Cir. 1994).

In *Santos*, the Second Circuit held that the respondent had established a prima facie case of egregiousness because he put forth facts that, if taken as true and viewed in the light most favorable to the respondent (as is required at this stage), established that the seizure was racially-motivated. *Santos*, 486 F. App'x at 920. The respondent in *Santos* submitted a sworn declaration that asserted, among other things, that he and a passenger in his vehicle had "olive skin" and "dark hair," that he had committed no wrongful act, and that the trooper who pulled him over inquired about his immigration status prior to advising him of the reason for the stop. *Id.* Here, Respondents present essentially the same facts in their attached sworn declarations. Respondents and the other passengers in Mr. Tun-Cos's car were of Latino race or ethnicity. Exhibit A, at ¶ 13. Respondents were engaged in no behavior that was criminal or otherwise suspicious. Exhibit A, at ¶ 4; Exhibit B, at ¶ 4. The ICE agents did not inform Respondents why they were stopped. Exhibit A, at ¶ 7. Such facts present at least a prima facie case that the ICE agents seized, continued to detain, and interrogated Respondents based on their race, ethnicity, or perceived national origin, which was an egregious violation of the Fourth Amendment. *See Yanez-Marquez v. Lynch*, 789 F.3d at 461.

Likewise, the ICE agents' warrantless arrest of Respondents violated various regulations governing ICE agents' conduct when making arrests—regulations that are themselves based on the Fourth Amendment. In seizing Respondents without a warrant or legitimate reason to

9

believe that they had committed an offense against the United States or were aliens illegally in the United States, the agents violated 8 C.F.R. § 287.8(c)(2)(i). In arresting Respondents at their home—a place where they were not likely to escape—without first obtaining a warrant, the agent violated 8 C.F.R. § 287.8(c)(2)(ii). And when the same officer who arrested Respondents also carried out their custodial interrogation, as is shown on the face of Respondents' I-213s, the agents violated 8 C.F.R. § 287.3(a), notwithstanding the explicit command of 8 C.F.R. § 287.8(c)(2)(iv) that such regulation be strictly complied with in the case of warrantless arrests such as this one. Such regulatory violations underscore the egregiousness of the ICE agents' constitutional violations.

### III. The Purported Rationale for Respondents' Seizure Was Not Based on Any Reasonable Suspicion Regarding Respondents.

ICE's purported rationale for stopping Respondents as stated in Respondents' I-213s—namely, that the agents were searching for Wilber Houx-Hernández—did not give the ICE agents reasonable suspicion to seize Respondents.[1] A quick look at Respondents as they were leaving the apartment building should have been enough for the ICE agents to discern that neither was Wilber Houx-Hernández. "Boxing in" their car, then detaining and questioning Respondents was wholly unnecessary for this purpose. *See United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)). In *De La Cruz*, the court held that there was no reasonable suspicion to seize the defendant when the person who was the target of the ICE investigation differed in age and physical features. *Id.* Here, similarly, Wilber Houx-Hernández is in his 20s, while Respondents and their companions are in their late-30s to

---

[1] At one point during the seizure, the ICE agents showed Respondents pictures of both Wilber and Carmelino Houx-Hernández. Exhibit A, at ¶¶ 10–11. However, Respondents' I-213s nowhere mention Carmelino Houx-Hernández.

40s. Exhibit A, at ¶ 14. Beyond this material age difference, neither Respondent looks anything like Wilber Houx-Hernández. Exhibit A, at ¶ 13.

Moreover, Respondents' prior association with or knowledge of the Houx-Hernández brothers did not suffice to give the ICE agents reasonable suspicion that Respondents had violated any immigration or other laws: even if the Houx-Hernández brothers had been standing right next to Respondents, "[t]here is no reasonable suspicion merely by association." *See Black*, 707 F.3d at 539. Finally, the fact that the Houx-Hernández brothers had lived at Respondents' residence five years ago did not permit the ICE agents to infer lawfully that Respondents had committed any wrongful acts. *See Cotzojay v. Holder*, 725 F.3d 172, 183 (2d Cir. 2013) (discussing how the fact that a known illegal immigrant lives at an address does not create reasonable suspicion "that additional illegal aliens remained behind the home's locked doors"). The ICE agents did no more than use photographs of two men of Latino ethnicity, who lived at Fairmont Gardens over five years ago, as a pretext to seize Respondents.

**IV. The ICE Agents' Entry Into Respondents' Apartment Without a Warrant and Without Consent Further Compounds the Egregiousness of the ICE Agents' Actions.**

It is well-settled that searches of the home require either a warrant or consent of the resident. *See, e.g., Payton v. New York*, 445 U.S. 573, 585 (1980); *Camara v. Mun. Court of the City and Cty. of S.F.*, 387 U.S. 523, 528–29 (1967). A warrantless entry into the home without consent would further establish the egregiousness of the ICE agents' actions, particularly in light of the fact that the ICE agents had no reasonable suspicion to seize Respondents in the first place. *See Yanez-Marquez*, 789 F.3d at 460 (holding that one factor supporting egregiousness is "where, when, and how the search, seizure or questioning took place"). In fact, the Fourth Circuit in *Yanez-Marquez* said that "warrantless searches of dwellings by government agents are

11

'the chief evil against which the wording of the Fourth Amendment is directed.'" *Id.* at 465 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)).

Here, unlike in *Yanez-Marquez*, the ICE agents did not have a warrant to enter Respondents' residence. Moreover, no consent was given by Respondents or any other individual for the ICE agents to enter the apartment where Respondents resided. Exhibit A, at ¶ 9; Exhibit B, at ¶ 9. Rather, the ICE agents instructed Respondents that they were going to the apartment and ordered Mr. Pajarito Saput to open the door. Exhibit B, at ¶ 9. Mr. Pajarito Saput gave no consent, verbal or otherwise, and felt that he had no choice but to obey the ICE agent's instructions. *Id.* Respondents' sworn declarations satisfy their burden of establishing, at least at this stage, that the ICE agents lacked consent to enter their apartment. *Cf. Santos*, 486 F. App'x at 920. The burden now shifts to the government to show, at an evidentiary hearing, that consent was given. *See Yanez-Marquez*, 789 F.3d at 451; *Cotzojay*, 725 F.3d at 179. The government cannot meet that burden, so the Court should terminate these proceedings.

## V.     The Court Should Terminate This Matter Due to ICE's Violations of Its Own Regulations.

When ICE violates its own regulations during a seizure of an alien, the resulting removal proceeding must be terminated when: (1) the regulation at issue was promulgated for the benefit or protection of the alien; and (2) the violation has the potential to prejudice the alien's interests. *Matter of Garcia-Flores*, 17 I&N Dec. 325, 328 (BIA 1980); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Ketema v. U.S.I.N.S.*, 14 F.3d 595 (4th Cir. 1994) (unpublished table decision); *Delgado-Corea v. INS*, 804 F.2d 261, 263 (4th Cir. 1986). "Where compliance with the regulation is mandated by the Constitution, prejudice may be presumed." *Matter of Garcia-Flores*, 17 I&N Dec. at 329. Here, the ICE agents violated several regulations that were promulgated for the protection of aliens, and such violations prejudiced Respondents.

12

Those regulations are designed to protect the same kinds of rights as those protected by the Fourth Amendment. Accordingly, the Court should terminate these proceedings.

First, in seizing Respondents without a warrant or legitimate reason to believe that they had committed an offense against the United States or were aliens illegally in the United States, the agents violated 8 C.F.R. § 287.8(c)(2)(i), which states that "[a]n arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States." As discussed above, the ICE agents had no legitimate reason to believe Respondents committed an offense against the United States or had no legal status. The ICE agents' violation of 8 C.F.R. § 287.8(c)(2)(i) prejudiced Respondents because otherwise Respondents would not have been arrested and these proceedings would not be pending against them.

Furthermore, in arresting Respondents at their home—a place where they were not likely to escape—without first obtaining a warrant, the agents violated 8 C.F.R. § 287.8(c)(2)(ii). There is no indication that the ICE agents believed Respondents were likely to escape nor is there any reason to believe that the ICE agents had any legitimate reason not to obtain an arrest warrant before arresting Respondents. Moreover, when the same officer who arrested Respondents also carried out their custodial interrogation, as is shown on the face of the I-213s, the agents violated 8 C.F.R. § 287.3(a), notwithstanding the explicit command of 8 C.F.R. § 287.8(c)(2)(iv) that such regulation be strictly complied with in the case of warrantless arrests such as this one. The BIA has held that 8 C.F.R. § 287.3 "was intended to serve a purpose of benefit to the alien." *Matter of Garcia-Flores*, 17 I&N Dec. at 329. This violation had the potential to prejudice Respondents, and prejudice may be presumed because this regulation protects rights similar to those protected by the Fourth Amendment.

13

Finally, the ICE agents' entry into Respondents' residence without a warrant or consent violates 8 C.F.R. § 287.8(f)(2), which states that an immigration officer may not enter a residence "for the purpose of questioning the occupants . . . concerning their right to be or remain in the United States unless the officer has either a warrant or the consent of the owner or other person in control" of the residence. In addition, if consent is given, the officer "must note on the officer's report that consent was given and, if possible, by whom consent was given." Here, as described above, no consent was given. On Respondents' I-213 Forms, the ICE agents cursorily claim that "consent was given . . . to enter and search apartment #3 by all individuals present." Such a statement lacks the specificity required by 8 C.F.R. § 287(f)(2). Under *Matter of Garcia-Flores*, prejudice may be presumed for a violation of 8 C.F.R. § 287(f)(2) because it protects the same rights as the Fourth Amendment.

## CONCLUSION AND PRAYER FOR RELIEF

Respondents have put forth a prima facie case warranting the suppression of any and all evidence obtained as a result of the unlawful seizure of Respondents on February 17, 2017, because it was an egregious violation of their Fourth Amendment rights and a violation of ICE regulations. Accordingly, the Court should suppress any evidence and terminate these removal proceedings. In the alternative, should the government submit evidence to rebut Respondents' prima facie case, Respondents request an evidentiary hearing so that the Court may determine whether to grant this motion to suppress and terminate these removal proceedings.

14

Dated: September 11, 2017

Respectfully submitted,

**LEGAL AID JUSTICE CENTER**

By: _____
Simon Y. Sandoval-Moshenberg
(EOIR ID No. QB725995)
Nicholas Marritz
(EOIR ID No. UX035069)

6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5605
simon@justice4all.org
nicholas@justice4all.org
*Counsel for Respondents*


**COVINGTON & BURLING LLP**

Daniel T. Grant
(EOIR ID No. VV838414)
Daniel E. Johnson
Mark H. Lynch
José E. Arvelo
Brandon H. Johnson

One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5851
dgrant@cov.com
dejohnson@cov.com
mlynch@cov.com
jarvelo@cov.com
bjohnson@cov.com
*Counsel for Respondents*