UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **MYNOR ABDIEL TUN-COS** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No.: 1:17-cv-943 (AJT/TCB) |
| v. | ) |
| | ) |
| **B. PERROTTE** *et al.*, | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS, OR ALTERNATIVELY, TO SEVER THEIR CLAIMS

Defendants, through their Motion to Strike the Seven Additional Plaintiffs and Their Claims, or Alternatively, to Sever Those Claims, contend that the claims of the seven new Plaintiffs added to the Amended Complaint do not arise out of the same transaction or occurrence as those of the two Plaintiffs who were named in the initial complaint. Dkt. 28. However, Defendants' narrow view of the joinder and amendment rules set forth in the Federal Rules of Civil Procedure is at odds with relevant precedent, and with the letter and spirit of the Rules themselves. Put simply, it is apparent that all of the Plaintiffs' claims stem from a series of related transactions and the same circumstances: Plaintiffs allege that the *same* Defendant U.S. Immigration and Customs Enforcement ("ICE") agents, working under the jurisdiction of the *same* ICE field office, committed the *same* unconstitutional act of unreasonable seizure and warrantless home invasion, and used the *same* tactic of showing a photograph of an allegedly known target twice, all within a *nine-day* period in the *same* month and within *six* miles of each other. What is more, Defendants have failed to demonstrate how joinder of Plaintiffs' claims prejudices Defendants, causes confusion, or risks complicating Defendants' representation. In

light of the above, the Court should find joinder of the new Plaintiffs proper, and deny Defendants' motion.

## FACTUAL BACKGROUND

On February 8, 2017, in the early morning hours, Plaintiff Germán Velasquez Perdomo was stopped without reasonable suspicion in his driveway in Arlington, Virginia, by a group of ICE agents who identified themselves as "police." Dkt. 25, ¶¶ 20-21. The ICE Defendants flashed a photograph of a purported suspect and asked if Mr. Velasquez Perdomo knew the man. *Id.* ¶ 21. When he responded that he did not, the agents demanded Mr. Velasquez Perdomo empty his pockets and frisked him. *Id.* ¶¶ 21-22. They questioned him about who was inside his house and, even though they had no warrant, demanded he let them in. *Id.* ¶¶ 22, 24. He attempted to resist, but feeling he had no choice but to obey the agents' commands, Mr. Velasquez Perdomo relented. *Id.* Once inside the house, the agents went from door to door, demanding the sleeping occupants to open their bedroom door, flashed the same photograph, entered the bedrooms without consent and searched under bedsheets of other sleeping occupants, including a 12-year-old girl and an elderly woman. *Id.* ¶¶ 25-43. The ICE Defendants quarantined the male occupants – all of apparent Latino race or ethnicity – in the living rooms on the first and basement floors and demanded they produce identification and proof of citizenship. *Id.* ¶¶ 28, 34, 40, 42-43. In the course of detaining the men in the first floor living room, one of the ICE agents asked Plaintiff José Cárcamo, the owner of the house, if there were any other "Spanish families" in the neighborhood. *Id.* ¶ 46. Six men – all but Mr. Cárcamo – were arrested. *Id.* ¶¶ 45-46.

Nine days later and six miles away, the same ICE Defendants stopped Plaintiffs Mynor Abdiel Tun-Cos and José Pajarito Saput – both men of apparent Latino race or ethnicity – without reasonable suspicion in the early morning hours outside their apartment as they were

pulling out of their parking space to drive to work.[1] *Id.* ¶¶ 55-59. The agents demanded the men produce identification, ordered them out of their car, and then demanded that Mr. Pajarito Saput let them into the apartment. *Id.* ¶¶ 60-62. The agents did not present a warrant and did not have reasonable suspicion that the men had violated any laws. *Id.* ¶ 59. Feeling he had no choice but to obey the command, Mr. Pajarito Saput relented. *Id.* ¶ 62. As the agents did in the incident nine days earlier, they showed Mr. Tun-Cos and Mr. Pajarito Saput a photograph of a purported suspect, and then frisked and arrested Mr. Tun-Cos and Mr. Pajarito Saput without probable cause. *Id.* ¶¶ 63-65. All Plaintiffs suffered harm, including loss of liberty and income, as a result of these seizures, home invasions, and arrests, based only on their perceived race or ethnicity. *Id.* ¶¶ 83, 88.

On August 23, 2017, Plaintiffs Mynor Abdiel Tun-Cos and José Pajarito Saput filed a civil rights lawsuit against five ICE agents for violations of their Fourth and Fifth Amendment Rights.[2] Dkt. 1. Defendant ICE agents filed a motion to dismiss on November 6. Dkt. 19. Plaintiffs notified Defendants shortly thereafter that they intended to amend the complaint to join additional plaintiffs. Due to the addition of new plaintiffs, the parties agreed that Defendants would have thirty days to file a motion to dismiss the amended complaint – more than the fourteen days allowed under Federal Rule of Civil Procedure 15(a)(3). On November 16, 2017, Luis Velasquez Perdomo, Pedro Velasquez Perdomo, Germán Velasquez Perdomo, Eder Aguilar Aritas, Eduardo Montano Fernández, Nelson Callejas Peña, and José Cárcamo joined the

---

[1] The locations of the alleged constitutional violations are approximately 6.3 miles apart, a fact of which the Court may take judicial notice. *See United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984) (holding that "geographical information is especially appropriate for judicial notice").

[2] As communicated to Defendants, Plaintiffs' counsel were not aware at the time of the filing of the initial complaint that the seven joined Plaintiffs' claims also involved the same Defendant ICE agents.

lawsuit.[3] Dkt. 25. Defendants filed a motion to strike or sever these additional plaintiffs, alleging their allegations arise out of a "separate incident." Dkt. 28 at 5.

## ARGUMENT

I. **Plaintiffs Advance Identical Constitutional Claims Arising from the Same Transaction or Series of Transactions.**

Federal Rule of Civil Procedure 20(a)(1) allows joinder of plaintiffs if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 20 supports the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). "[T]he rule should be construed in light of its purpose, which 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)).

---

[3] Defendants contend in a footnote that Plaintiffs were required to seek leave from the Court before amending their initial complaint, but Defendants are wrong. Federal Rule of Civil Procedure 15(a)(1)(B) specifically allows a plaintiff to amend a complaint as a matter of course within 21 days after the filing of a responsive motion under Federal Rule of Civil Procedure 12(b). The 2009 amendments to the Federal Rules allow Plaintiffs to add new parties via the Rule 15 amendment up to 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(B); *see also Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) (finding plaintiff had absolute right to amend his complaint to add additional parties under Rule 15); *Produce All., LLC v. Let-Us Produce, Inc.*, No. 2:10cv198, 2010 WL 7504802, at *2 (E.D. Va. Nov. 22, 2010) (holding plaintiff had absolute right under Rule 15 to amend its complaint, including the addition of six new plaintiffs and two new defendants, once without leave of court). Cases cited by Defendants involve a prior version of Rule 15 before it was amended in 2009 to extend this period to amend as of right; that is, the plaintiffs in those cases were seeking to amend their complaints after the deadline for amending as a matter of right had expired. *See Age of Majority Educ. Corp. v. Preller*, 512 F.2d 1241, 1245-46 (4th Cir. 1975) (noting that the plaintiff sought to amend its complaint after defendants had filed a responsive pleading); *see also* Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment (explaining that prior to the 2009 amendment, "[s]erving a responsive pleading terminated the right to amend").

Defendants do not argue that there is no "question of law or fact common to all plaintiffs." Instead, they argue that the seven joined Plaintiffs' claims do not arise out of the "same occurrence or series of occurrences" as those of the two original Plaintiffs. Dkt. 29 at 6. "The transaction or occurrence test of Rule 20 generally proceeds on a case by case basis, and permits all 'reasonably related claims . . . to be tried in a single proceeding.'" *LHF Prods., Inc. v. Does 1-10*, No. 3:16cv748, 2016 WL 7422657, at *2 (E.D. Va. Dec. 22, 2016) (quoting *Saval*, 710 F.2d at 1031). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship." *Mosley,* 497 F.2d at 1333.

Plaintiffs' claims arise out of the "same transaction or occurrence or series of transactions or occurrences" because they allege that the same Defendant ICE agents used identical unconstitutional practices to stop and seize them without reasonable suspicion and based only on their perceived race or ethnicity, coerce entry into Plaintiffs' homes and arrest them without probable cause. *See Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1324 (11th Cir. 2000) (affirming joinder of 18 plaintiffs who alleged "same core allegation" that they were subject to pattern of race-based discrimination), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003). In each incident, Defendants presented an alleged suspect's photograph to justify stopping, seizing and searching Plaintiffs' homes without cause and then detained Plaintiffs even after discovering that the Plaintiffs were not the person for whom Defendants allegedly were looking. Dkt. 25, ¶¶ 21-22, 35, 43, 63-65. Defendants gained entry to Plaintiffs' homes without a warrant or voluntarily-given consent and without suspicion that any laws had been violated. *Id.* ¶¶ 22-23, 62. Once inside, Defendants searched the homes, rounded up all Latino men present despite the complete absence of suspicion that they had broken any

laws, and arrested all Plaintiffs (with the exception of Mr. Cárcamo). *Id.* ¶¶ 45-46, 65. These practices are more than "logically related"; they are essentially identical, which is more than enough to establish a related series of transactions or occurrences under Rule 20. *See Saval*, 710 F.2d at 1031; *Mosley,* 497 F.2d at 1333.

Defendants argue that the fact that they employed the same unconstitutional practices twice "on a different date and in an entirely different city" should prevent all parties injured by those practices from suing together. Dkt. 29 at 5. Where plaintiffs challenge identical violations of constitutional rights by the same team of Defendant ICE agents within a nine-day period in two northern Virginia neighborhoods a mere six miles apart, immaterial factual details such as the name of the city do not suggest that the claims are not logically related. For example, in *Alexander v. Fulton County, Georgia*, a sheriff who had been found liable by a jury for engaging in a pattern or practice of employment discrimination against white personnel in the sheriff's department appealed the jury's verdict, alleging, among other things, that the district court had erred in trying all 18 of the plaintiffs' claims together. *See* 207 F.3d at 1313, 1323. Notwithstanding the fact that the plaintiffs each were subject to different discriminatory incidents, such as discrimination in promotions, transfers, assignments, or discipline, the Eleventh Circuit rejected the sheriff's argument, deeming the district court's joinder of the plaintiffs' claims proper because the claims "stem[med] from the same core allegation that they were subject to a *systemic* pattern or practice of race-based discrimination" and that the alleged discriminatory character of the sheriff's conduct was "plainly common to each plaintiff's recovery." *Id.* at 1324. Similarly, in *Advamtel, LLC v. AT&T Corp.*, the Eastern District of Virginia found the joinder of the claims of 16 plaintiff local exchange carriers against two defendant long distance carriers proper where all of the plaintiffs' claims arose from long-

distance calls that were routed from the plaintiffs' local networks to the defendants' long-distance networks, despite the fact that the particular tariff rates filed by each of the plaintiffs may have been different. 105 F. Supp. 2d 507, 514 (E.D. Va. 2000).

In the instant case, the two violations of constitutional rights occurred in locations a mere six miles apart from each other within a nine-day period, and were committed by the same agents under essentially the same circumstances. *See supra* note 1. Further, both operations originated from and were overseen by ICE's Washington Field Office. *See Enforcement and Removal Operations Field Offices*, U.S. Immigration & Customs Enforcement, *available at* https://www.ice.gov/contact/ero (last updated Nov. 9, 2017) (designating "Washington Field Office" as responsible for immigration enforcement in the District of Columbia and Virginia). The fact that the agents committed the first set of constitutional violations in Arlington, and the second set in neighboring Annandale, is wholly immaterial because both cities are overseen by the same ICE Field Office. Even if the evidence presented at trial demonstrates that not all Defendants were involved in both operations, Rule 20 expressly provides that "[n]either a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded" and a "court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed. R. Civ. P. 20(a)(3).

The cases on which Defendants rely do nothing to bolster their argument. For example, in *Lover v. District of Columbia*, the court denied joinder of five new plaintiffs over a year after the case was initially filed because it would have caused significant delay and the new allegations involved police searches conducted by entirely different defendant police officers over a 14-month period. 248 F.R.D. 319 (D.D.C. 2008). Other cases to which Defendants cite are similarly distinguishable. *See, e.g.*, *Jackson v. Jernigan*, No. 3:16-cv-00750-JHM, 2017 WL 1962713, at

*3 (W.D. Ky. May 11, 2017) (denying a motion for leave to amend under Rule 15(a)(2) because the proposed new plaintiff's claims arose from circumstances that occurred five months before those from which the existing plaintiff's claims arose); *Stojcevski v. Cty. of Macomb*, 143 F. Supp. 3d 675, 683 (E.D. Mich. 2015) (deeming claims of former county jail inmate and his deceased brother for deliberate indifference to medical needs improperly joined because the brothers "were housed in separate units, experienced different medical problems, and received different medical treatment by varying medical providers"); *Blood v. Fed. Bureau of Prisons*, No. 3:09-cv-229, 2009 WL 1118471, at *4 (M.D. Pa. 2009) (denying joinder where plaintiffs' complaint "clearly indicates Plaintiffs have separate underlying claims regarding withholding of documents and separate cases pending in various courts"), *aff'd in relevant part*, 351 F. App'x 604, 607 (3d Cir. 2009). Here, Plaintiffs sue the same Defendant ICE agents for using the same practices *just days* before the event alleged in the original complaint, circumstances which bear far more relation than those in *Lover* and the other cases on which Defendants rely.

Moreover, at this early stage of litigation, any prejudice to Defendants in the form of delay (if any) is far outweighed by the resources saved by having the cases proceed together. *See Wright v. Corr. Corp. of Am.*, No. 1:00-cv-00293(GK), 2016 WL 264907 (D.D.C. Jan. 21, 2016) (distinguishing *Lover*). Defendants' interpretation of Rule 20 would effectively require Plaintiffs to plead an "[a]bsolute identity of all events" in order to satisfy the transaction or occurrence test — such a reading has been plainly rejected by the Fourth Circuit. *Saval*, 710 F.2d at 1031 (quoting *Mosley*, 497 F.2d at 1333).

**II.     Allowing Plaintiffs to Proceed In a Single Case Is Efficient and Avoids Duplicative Lawsuits.**

Joinder of all Plaintiffs will serve the purposes of Rule 20 and will not prejudice Defendants or create confusion. Striking or severing the Arlington Plaintiffs in this case will

result in two nearly-identical cases involving the same Defendant ICE agents, the same allegedly unconstitutional practices, the same type of claims, and the same legal questions. Separate lawsuits would likely cause duplicative discovery and repeated motions examining, for example, the training provided to Defendant ICE agents, whether the ICE agents had a practice of using the pretext of a search for a suspect to justify unconstitutional detentions, and whether the ICE agents' understanding of consent within the meaning of the Fourth Amendment conformed with controlling Fourth Circuit precedent. Similarly, striking or severing the Arlington Plaintiffs would result in two lawsuits simultaneously faced with the same legal question of whether multiple ICE agents, presenting themselves as police, may lawfully use the purported search for a suspect to detain other individuals and to demand entry into a person's home without consent and without a warrant.

Furthermore, contrary to Defendants' baseless statement that the Court will be forced to separate the cases before trial, a jury is more than capable of understanding that the same tactics may be used on subsequent days in different locations against a different group of people who were similarly targeted on the basis of their apparent race or ethnicity. *See, e.g.*, *U.S. v. Mississippi*, 380 U.S. 128 (1965) (joinder proper where six county registrars acted in different parts of the state but as part of a statewide system designed to enforce voter registration laws in a racially discriminatory way); *Mosely*, 497 F.2d 1330 (joinder of 10 plaintiffs proper where illegal character of conduct was common even though individual plaintiffs suffered different effects); *Alexander*, 207 F.3d at 1325 (affirming trial of 18 plaintiffs' race-discrimination claims together was proper because "the potential for prejudice was minimized because of the core similarities in Plaintiffs' claims"). In any event, allowing Plaintiffs to proceed together at this early stage does not foreclose the Court's ability to limit the admission of evidence as appropriate to protect

Defendants from undue prejudice, or even order a separate trial on separate issues or claims at a later date, if appropriate. *See* Fed. R. Evid. 105, 403; Fed. R. Civ. P. 42(b).

### III. Defendants' Hypothetical Risk Which Does Not Exist in this Case Is Not a Reason to Strike or Sever Plaintiffs or Their Claims.

Under the Federal Rules, multiple plaintiffs are permitted to proceed in one action so long as the requirements and purposes of Rule 20(a)(1) are met. However, Defendants argue that, hypothetically, allowing plaintiffs to join after the initial filing of the lawsuit would "frustrate" the Department of Justice's internal representation approval system. Dkt. 29 at 8. Defendants concede that this hypothetical frustration does not exist in this case since Plaintiffs have agreed to, and the Court has granted, an extension for time to respond to the Amended Complaint. Dkt. 29 at 8 n.4; *see also* Fed. R. Civ. P. 15(a)(3) (allowing the court to adjust the normal time period allowed to respond to an amended pleading). Given the overriding preference for "entertaining the broadest possible scope of action," a concern regarding hypothetical future individual-capacity federal defendants is not a reason to strike or sever plaintiffs in this case. *Gibbs*, 383 U.S. at 724.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion and allow this matter to proceed expeditiously in a single action.

Dated: December 11, 2017                    Respectfully submitted,

**LEGAL AID JUSTICE CENTER**

/s/ Hallie Ryan
Simon Y. Sandoval-Moshenberg (VSB No. 77110)
Hallie Ryan (VSB No. 85927)
Nicholas Marritz (VSB No. 89795)
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 226-3426

simon@justice4all.org
hallie@justice4all.org
nicholas@justice4all.org

**COVINGTON & BURLING LLP**

By: _____//s//_____
Daniel E. Johnson (VSB No. 88696)
Mark H. Lynch (pro hac vice)
José E. Arvelo (pro hac vice)
Brandon H. Johnson (pro hac vice)
Daniel T. Grant (pro hac vice)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-5224
dejohnson@cov.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document on December 11, 2017 via the Court's CM/ECF system, which will cause a copy to be sent to:

>Dennis C. Barghaan, Jr.
>Deputy Chief, Civil Division, Assistant U.S. Attorney
>Chad A. Readler
>Dana J. Boente
>C. Salvatore D'Alessio, Jr.
>Mary Hampton Mason
>2100 Jamieson Avenue
>Alexandria VA 22314
>Email: Dennis.barghaan@usdoj.gov

/s/ Hallie Ryan                                     Date: December 11, 2017
Hallie Ryan (VSB No. 85927)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 226-3426
Fax: (703) 778-3454
hallie@justice4all.org
*Counsel for Plaintiff*