IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MYNOR ABDIEL TUN-COS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 1:17-cv-943 |
| | ) | |
| B. PERROTTE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN SUPPORT OF THE DEFENDANTS'
MOTION TO STRIKE THE SEVEN NEWLY ADDED PLAINTIFFS,
OR ALTERNATIVELY, TO SEVER THEIR CLAIMS**

**INTRODUCTION**

In their opening motion, Defendants B. Perrotte, T. Osborne, D. Hun Yim, P. Manneh, and A. Nichols—United States Immigration and Customs Enforcement (ICE) agents who are each sued personally in their individual capacities—demonstrated to this Court through relevant case law that the addition of seven newly added Plaintiffs raising allegations about a separate incident in Arlington, Virginia, on February 8, 2017, was a misjoinder of parties to the original Plaintiffs' complaint, which involved an incident in Annandale, Virginia, on February 17, 2017. Plaintiffs' opposition fails adequately to grapple with any of that case law. Instead, they repeatedly insist that the two incidents involved the same Defendants, circumstances, and tactics, an assertion that is demonstrably incorrect based on their own amended complaint. Moreover, Plaintiffs fail to cite a *single case* permitting joinder in a lawsuit like this one—an individual-capacity suit by multiple plaintiffs seeking damages from multiple individual defendants based on distinct events. Instead, they cite readily distinguishable cases involving not individual-capacity claims against multiple individual defendants, but challenges to policies and practices—

policy and practice-type claims that the original Plaintiffs included in their original complaint but, after Defendants pointed out in their initial motion to dismiss were not properly pled against individuals, chose to exclude from the allegations in their amended complaint. Plaintiffs' reliance on that case law, and the underlying policy and practice claim no longer explicitly pled, are telling. They reveal Plaintiffs' misapprehension of litigation under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*. And they illuminate the true nature of their suit, which is to challenge ICE's purported immigration enforcement practices, policies, and procedures in Virginia and throughout the United States.

I. **Contrary to Plaintiffs' Assertions, the Two Sets of Plaintiffs' Claims Do Not Involve the Same Defendants or the Same Circumstances.**

Based on Plaintiffs' own amended complaint, and contrary to the representations in their opposition, the newly added Plaintiffs' claims do not involve the same Defendants, the same tactics, or the same allegedly unconstitutional acts as those of the original Plaintiffs' claims. Plaintiffs' numerous repetitions in their brief that they do, *see* Dkt. #32 at 1-2, 5-9, does not make it so. As Defendants explained in their motion, the newly added Plaintiffs allege that "four Defendants" participated in the February 8 incident. *See* Dkt. #29 at 4.  In contrast, they allege that five Defendants participated in the February 17 incident. *See* Dkt. #25, First Am. Compl., ¶ 57 (FAC) (referring to "Defendants"); Dkt. #1, Compl., ¶ 22. The two incidents therefore involved separate compositions of Defendants, *see* Dkt. #29 at 4, 6, and nowhere do Plaintiffs plead specific facts to indicate the identity of the Defendants allegedly involved.

Moreover, it is wholly unclear from Plaintiffs' amended complaint precisely *how many* "Defendants" were allegedly involved in the February 8 incident. Indeed, after alleging that "four Defendants" entered the house on February 8, Dkt. #25, FAC, ¶ 23, and that "three

2

Defendants" remained in the basement of the house, *id.* ¶ 28, Plaintiffs claim that "two Defendants" then went upstairs to the second floor, raising to five the number of "Defendants" purportedly involved. *Id.* ¶¶ 29-30. But when those "two Defendants" returned to the first floor (not the basement), "several armed Defendants" already awaited them, *id.* ¶ 40, while "Defendants" still remained in the basement. *Id.* ¶ 44. That puts the total number of "Defendants" participating in the incident at seven—if not more. Regardless, this much is clear from Plaintiffs' amended complaint: the composition of ICE agents that allegedly participated in the February 17 incident is *not* the same as the composition of ICE agents that allegedly participated in the February 8 incident.

Nor are the alleged circumstances or tactics the same, as a cursory review of the amended complaint demonstrates. To highlight but two examples, the February 8 incident allegedly involved a room-to-room search throughout a house with sleeping occupants. *Id.* ¶¶ 25-43. The February 17 incident contains no such allegations. And at least one newly added Plaintiff asserts that the February 8 search for an individual was simply a ruse to gain entry to the house. *Id.* ¶ 46. The February 17 incident contains no such allegations. Instead, the original Plaintiffs concede that the individuals ICE sought had in fact lived in their apartment. *Id.* ¶ 63.

As Plaintiffs implicitly acknowledge, differences in the number and composition of defendants supports Defendants' showing that the two incidents do not arise from the same transaction or occurrence under Rule 20. *See* Dkt. #32 at 5. Additionally, where plaintiffs introduce "new complex and serious charges," as the newly added Plaintiffs have, undue prejudice is likely to result and joinder should not be permitted. *Lover v. District of Columbia*, 248 F.R.D. 319, 322 (D.D.C. 2008); *cf. Wright v. Corr. Corp. of Am.*, No. 1:00-cv-293, 2016 WL 264907, at *3 (D.D.C. Jan. 21, 2016) (permitting joinder because amended complaint did not

3

introduce "new complex and serious charges" (quoting *Lover*)). Put simply, Plaintiffs' amended complaint advances an independent incident involving new parties that suggests a new theory of liability against the Defendants. This Court should therefore strike the newly added Plaintiffs and allow them to file suit separately, or should sever their claims.[1]

## II. Plaintiffs Cite No Cases Permitting Joinder of Multiple Plaintiffs Seeking Damages Against Multiple Defendants in Their Individual Capacities.

Furthermore, Defendants cited in their opening brief numerous cases in which courts found joinder improper for individual-capacity claims brought by one or more plaintiffs against multiple defendants based on distinct events. *See* Dkt. # 29 at 6-8 (citing *Stojcevski v. Cnty. of Macomb*, 143 F. Supp. 3d 675 (E.D. Mich. 2015), *Blood v. Fed. Bureau of Prisons*, No. 3:CV-09-229, 2009 WL 1118471 (M.D. Pa. Apr. 24, 2009), and *Lover*, among other cases). As reasons for denying joinder, those cases noted the different facts and circumstances underlying the various plaintiffs' claims, the variances in analysis that would flow from those differences, and the likely prejudice that would inure to those individual-capacity defendants from a confused jury. *See, e.g.*, *Stojcevski*, 143 F. Supp. 3d at 683; *Lover*, 248 F.R.D. at 325. Defendants also offered reasons for this confusion and the prejudice that would result. *See* Dkt. #29 at 4-5. Although a lay jury may naturally consider evidence of one alleged prior bad act in determining whether another occurred, thereby finding defendants more likely to have committed a constitutional violation in one instance because they are alleged to have done so in another, the

---

[1] Because the two incidents involved neither the same Defendants nor identical circumstances, Plaintiffs' arguments regarding efficiency, Dkt. # 32 at 8-9, at least beyond the pleadings stage, do not carry weight compared to the prejudice Defendants may face. And although Plaintiffs are correct that the representation concerns Defendants raised are no longer present in this case, as an institutional matter, these Defendants, federal employees in general, and the Department of Justice have a strong interest in avoiding the joinder of parties raising unrelated allegations through amendment as a matter of course, which effectively truncates their time to respond.

Federal Rules of Evidence prohibit this result. *See* Fed. R. Evid. 403, 404.

In response, Plaintiffs fail to cite a single case involving an individual-capacity lawsuit against multiple individuals based on discrete incidents. Instead, they cite cases that either involve claims against a single individual defendant; a corporation or corporations; or that seek relief other than damages. *See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1313 (11th Cir. 2000) (claims against single individual and county), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507, 508 & n.2 (E.D. Va. 2000) (claims against corporation); *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330, 1331 (8th Cir. 1974) (claims against corporation); *Wright*, 2016 WL 264907, at *1 (claims against corporations); *United States v. Mississippi*, 380 U.S. 128, 135 (1965) (claims for declaratory and injunctive relief).[2] Those cases have little relevance here. That is because in *Bivens*, an individual government employee can only be liable for his own actions, not for the actions of others. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). And constitutional claims against government officials for injunctive relief necessarily run against them in their official capacities or against their agencies, not, as here, against them personally for money damages. *See Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 452 n.10 (4th Cir. 2004). Thus, the dangers of confusion and prejudice that may result from misjoinder of claims are more pronounced in the *Bivens* context than in the context of claims against single defendants, governments, or corporations.

Moreover, two of the main cases Plaintiffs rely on support Defendants' motion. First, in

---

[2] Although *Mississippi* refers to "individual torts," *id.* at 142, the Court does not mention that individual-capacity damages were sought. In any event, joinder there was found proper because the complaint charged the defendants with "continuing to act as part of" a discriminatory "state-wide system," *id.*, which, as explained below, is not a proper basis for a *Bivens* claim against individual government employees. *See infra* Part III.

*Alexander*, which involved class-action claims by police officers of a "pattern and practice" of racial discrimination against the top official of their department, the county sheriff, the Eighth Circuit noted that the prejudicial effects of joining all the plaintiffs' claims may have warranted overturning the district court if the alleged discrimination involved different officials or occurred in different locations. 207 F.3d at 1324. Such concerns are present here, where Plaintiffs' claims are against a different composition of Defendants and involve different events in different locations. *See supra* Part I.

Second, in *Advamtel*, the district court *severed* the plaintiffs' claims against the two defendant corporations because the "nature of the defendants' cases" were different. 105 F. Supp. 2d at 515. This was so even though the claims against both defendants "raised similar issues," *id.* at 508 n.2, all plaintiffs sought claims against the two defendants based on the "routing of calls to two different long distance carriers," and both defendants "challenged the reasonableness of plaintiffs' tariff rates." *Id.* at 515. All the more so here, where two separate groups of Plaintiffs bring claims against a different composition of Defendants based on separate, distinct events which involved different facts and circumstances, albeit, as Plaintiffs repeatedly note, Dkt. #32 at 1, 6-7, within nine days and six miles of each other.

Lastly, Plaintiffs fail to meaningfully distinguish any of the cases Defendants cited in their motion. They instead focus on the length of time between the separate events at issue or the specific differences in circumstances in those cases. *See* Dkt. #32 at 7-8. But in terms of joinder, what matters is not the length of time or the specifics of the differences. Rather, what matters is that there were separate events at different times, and that the circumstances of those events were different. And Plaintiffs do not at all address *Peterson v. Regina*, 935 F. Supp. 2d 628 (S.D.N.Y. 2013), and its applicability to this case. *See* Dkt. #29 at 7. In sum, Plaintiffs have cited no case

*Alexander*, which involved class-action claims by police officers of a "pattern and practice" of racial discrimination against the top official of their department, the county sheriff, the Eighth Circuit noted that the prejudicial effects of joining all the plaintiffs' claims may have warranted overturning the district court if the alleged discrimination involved different officials or occurred in different locations. 207 F.3d at 1324. Such concerns are present here, where Plaintiffs' claims are against a different composition of Defendants and involve different events in different locations. *See supra* Part I.

Second, in *Advamtel*, the district court *severed* the plaintiffs' claims against the two defendant corporations because the "nature of the defendants' cases" were different. 105 F. Supp. 2d at 515. This was so even though the claims against both defendants "raised similar issues," *id.* at 508 n.2, all plaintiffs sought claims against the two defendants based on the "routing of calls to two different long distance carriers," and both defendants "challenged the reasonableness of plaintiffs' tariff rates." *Id.* at 515. All the more so here, where two separate groups of Plaintiffs bring claims against a different composition of Defendants based on separate, distinct events which involved different facts and circumstances, albeit, as Plaintiffs repeatedly note, Dkt. #32 at 1, 6-7, within nine days and six miles of each other.

Lastly, Plaintiffs fail to meaningfully distinguish any of the cases Defendants cited in their motion. They instead focus on the length of time between the separate events at issue or the specific differences in circumstances in those cases. *See* Dkt. #32 at 7-8. But in terms of joinder, what matters is not the length of time or the specifics of the differences. Rather, what matters is that there were separate events at different times, and that the circumstances of those events were different. And Plaintiffs do not at all address *Peterson v. Regina*, 935 F. Supp. 2d 628 (S.D.N.Y. 2013), and its applicability to this case. *See* Dkt. #29 at 7. In sum, Plaintiffs have cited no case

law on point. Nor have they persuasively distinguished the relevant case law Defendants have cited.

> III. **Plaintiffs Sue Some Unclear Composition of Individuals for Two Separate Incidents Effectively To Challenge Alleged Policies, Patterns, and Practices of ICE, Which Is Not Proper Under *Bivens*.**

Relatedly, Plaintiffs' attempt to sue Defendants (again, not the identical ones in the each instance) for two separate incidents in Virginia in effect is a challenge to purported policies, patterns, and practices of ICE in Virginia and nationwide. Three points make this evident. First, Plaintiffs' assertion that "both operations originated from and were overseen by ICE's Washington Field Office," Dkt. #32 at 7, is wholly irrelevant in the context of individual-capacity suits against ICE agents for their alleged actions at the locations of the incidents. Second, Plaintiffs' reliance on cases that involved challenges to allegedly unconstitutional or illegal governmental and corporate policies, patterns, and practices is inapposite in the context of a *Bivens* claim, for which individual federal employees are liable only for their own personal misconduct. *See Mississippi*, 380 U.S. at 135 (suit challenging allegedly discriminatory state voting laws and practices); *Alexander*, 207 F.3d at 1313 (class action challenging county "policy or custom" and "pattern or practice" of racial discrimination); *Mosley*, 497 F.2d at 1331 (class action challenging discriminatory corporate policies). And third, the original Plaintiffs explicitly stated as much in their original complaint. *See* Dkt. #1, Compl. ¶¶ 5, 15 (citing and quoting Trump Administration pronouncements and memoranda as a cause for their arrests).

Such an approach—to both joinder and a lawsuit—might make sense in the context of class-action suits against corporations, or against governmental entities under 42 U.S.C. § 1983, for which state and local governmental organizations can be held liable for unconstitutional policies and practices. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)

(holding that "municipalities and other local government units" are considered "persons" for whom § 1983, which prohibits deprivations of constitutional rights through state laws, customs, or usages, applies). But not in the context of individual-capacity claims under *Bivens*. As the Supreme Court recently explained, "a *Bivens* action is not a proper vehicle for altering an entity's policy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (citation and internal quotation omitted); *see also FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994) (barring *Bivens* claims against federal agency). And, as mentioned above, in *Bivens*, "each Government official . . . is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Plaintiffs' attempt to lump all seven Plaintiffs and all five Defendants together in one lawsuit for two separate incidents on the basis of perceived similarities between those two incidents and the purportedly common oversight in place for both incidents runs contrary to this guidance.[3]

## CONCLUSION

Plaintiffs have failed to rebut Defendants' showing that these two sets of claims do not arise from the same transaction or occurrence. Contrary to their assertions, these claims do not involve the same Defendants, nor do they involve the same circumstances or tactics. Furthermore, Plaintiffs' attempt to join these claims reveals their true intent in bringing their claims, which is to challenge purported governmental policies, an objective for which *Bivens* is not intended. For these reasons, and those discussed above and in Defendants' opening motion, this Court should strike the newly added Plaintiffs and their claims from this lawsuit, or should sever those claims.

---

[3] In their opening brief, Defendants mentioned in a footnote that technically, Plaintiffs were required to seek leave before amending their complaint to add parties. *See* Dkt. #29 at 4 n.3. Plaintiffs are correct that, under Fourth Circuit precedent, they were not required to seek leave, although we note that the approach of most courts, at least before the 2009 amendments to Rule 15, was to require leave. *See* Wright & Miller, 7 *Fed. Prac. & Proc. Civ.* § 1688 (3d ed.).

DATED this 18th day of December, 2017.

                                              Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

DANA J. BOENTE
United States Attorney
Eastern District of Virginia

C. SALVATORE D'ALESSIO, Jr.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

      /s/
KIMERE J. KIMBALL
DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891/3763
Fax: (703) 299-3983
E-Mail: dennis.barghaan@usdoj.gov
E-Mail: kimere.kimball@usdoj.gov

Paul E. Werner
Trial Attorney
Civil Division, Torts Branch
P.O. Box 7146 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4152
Fax: (202) 616-4134
E-Mail: paul.werner@usdoj.gov

Attorneys for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to:

Simon Y. Sandoval-Moshenberg
VA Bar No. 77110
Nicholas Marritz
VA Bar No. 89795
Legal Justice Aid Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Telephone: (703) 720-5605
E-Mail: simon@justice4all.org; nicholas@justice4all.org

Daniel E. Johnson
VA Bar No. 88696
Mark H. Lynch (*pro hac vice*)
Jose E. Arvelo (*pro hac vice*)
Brandon H. Johnson (*pro hac vice*)
Daniel T. Grant (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5224
E-Mail: dejohnson@cov.com

      /s/
KIMERE J. KIMBALL
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3763
Fax: (703) 299-3983
E-Mail: kimere.kimball@usdoj.gov