UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **MYNOR ABDIEL TUN-COS,** | ) | |
| **JOSÉ PAJARITO SAPUT,** | ) | |
| **LUIS VELASQUEZ PERDOMO,** | ) | |
| **PEDRO VELASQUEZ PERDOMO,** | ) | |
| **GERMÁN VELASQUEZ PERDOMO,** | ) | |
| **EDER AGUILAR ARITAS,** | ) | |
| **EDUARDO MONTANO FERNÁNDEZ,** | ) | |
| **NELSON CALLEJAS PEÑA,** | ) | |
| **and** | ) | |
| **JOSÉ CÁRCAMO** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 1:17-cv-00943 (AJT-TCB) |
| **v.** | ) | |
| | ) | |
| **B. PERROTTE, T. OSBORNE, D. HUN YIM,** | ) | |
| **P. MANNEH, and A. NICHOLS,** | ) | |
| **ICE AGENTS** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iv

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

STANDARD OF REVIEW ........................................................................................... 4

ARGUMENT ............................................................................................................... 4

     I.     The INA Does Not Remove This Court's Jurisdiction Over Plaintiffs'
          Claims. ................................................................................................ 5

          A.     Plaintiffs do not seek review of a removal order, so the INA does
                  not apply here. ........................................................................ 5

          B.     Plaintiffs' claims are independent of and collateral to the removal
                  process and thus present no logistical concerns that would warrant
                  dismissal. ................................................................................ 7

     II.    The Complaint States a Valid *Bivens* Claim. ........................................ 10

          A.     This case would not extend *Bivens* into a new context. ............. 10

          B.     Even if Plaintiffs' claims could be construed as extending the
                  *Bivens* remedy to the immigration context, no special factors exist
                  that counsel hesitation to apply *Bivens* in this context. ............. 15

               1.     There is no alternative, existing process by which Plaintiffs
                      can vindicate their constitutional rights. ....................... 15

               2.     There are no additional "special factors" that would counsel
                      hesitation against implying a *Bivens* remedy under these
                    circumstances. .............................................................. 19

     III.   Defendants Are Not Entitled to Qualified Immunity. ........................... 24

          A.     Plaintiffs sufficiently allege that each individual Defendant ICE
                  agent personally participated in the violations of Plaintiffs' clearly
                  established Fourth and Fifth Amendment rights. ...................... 25

           B.     Defendants violated Plaintiffs' clearly established Fourth
                  Amendment rights. ................................................................. 28

                1.     Defendants unreasonably seized Plaintiffs in violation of
                      the Fourth Amendment when they detained Plaintiffs

without reasonable, articulable suspicion of unlawful activity.......................................................................................... 28

2.      Even if Defendants had a reasonable, articulable suspicion that Plaintiffs committed unlawful activity, the intensive and prolonged nature of their detention violated the Fourth Amendment................................................................................. 30

3.      Defendants' warrantless search of Plaintiffs' residences without consent constituted an additional violation of the Fourth Amendment. ..................................................................... 32

4.      Defendants' unreasonable search and seizure of Plaintiffs violated their clearly established Fourth Amendment rights. ....... 33

C.      Defendants denied Plaintiffs equal protection under the law in violation of the Fifth Amendment by targeting them solely based on their race, ethnicity, or perceived national origin. ............................... 35

CONCLUSION............................................................................................................ 36

## **TABLE OF AUTHORITIES**

**Cases**............................................................................................................. **Page(s)**

*Aguilar v. U.S. Immigration & Customs Enforcement,*
    510 F.3d 1 (1st Cir. 2007) ..........................................................................6, 8, 9

*Alvarez v. U.S. Immigration & Customs Enf't,*
    818 F.3d 1194 (11th Cir. 2016) ........................................................................16

*Argueta v. U.S. Immigration & Customs Enf't,*
    No. 08-1652 (PGS), 2009 WL 1307236 (D.N.J. May 7, 2009)...........................18

*Arias v. U.S. Immigration & Customs Enforcement,*
    No. 07-1959 ADM/JSM, 2008 WL 1827604 (D. Minn. Apr. 23, 2008)..................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................25

*Attkisson v. Holder,*
    No. 1:17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017) ...........................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................4

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971).............................................................................. *passim*

*Bloch v. Exec. Office of the President,*
    164 F. Supp. 3d 841, 860 ...................................................................................24

*Bonhometre v. Gonzales,*
    414 F.3d 442 (3d Cir. 2005).................................................................................8

*Bryson v. Gonzales,*
    534 F.3d 1282 (10th Cir. 2008) .........................................................................27

*Carlson v. Green,*
    446 U.S. 14 (1980)............................................................................................21

*Chehazeh v. Att'y Gen. of the U.S.,*
    666 F.3d 118 (3d Cir. 2012)............................................................................5, 6

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001).......................................................................................11, 17

*Crews v. Virginia*,
No. 1:16cv407(JCC/JFA), 2016 WL 4705143 (E.D. Va. Sept. 8, 2016) ...............................22

*Danser v. Stansberry*,
772 F.3d 340 (4th Cir. 2014) ...............................................................................................24

*Davis v. Passman*,
442 U.S. 228 (1979)........................................................................................................12, 21

*De La Paz v. Coy*,
786 F.3d 367 (5th Cir. 2015) ...............................................................................................16

*Diaz-Bernal v. Myers*,
758 F. Supp. 2d 106 (D. Conn. 2010)......................................................................... *passim*

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ...............................................................................................22

*FDIC v. Meyer*,
510 U.S. 471 (1994)...............................................................................................................20

*Florida v. Royer*,
460 U.S. 491 (1983) ...............................................................................................................30

*Franco-Gonzales v. Holder*,
767 F. Supp. 2d 1034 (C.D. Cal. 2010) .................................................................................6

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ...............................................................................................33

*Groh v. Ramirez*,
540 U.S. 551 (2004)...............................................................................................................33

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...............................................................................................................24

*Henry v. Purnell*,
501 F.3d 374 (4th Cir. 2007) ...............................................................................................25

*Illinois v. Caballes*,
543 U.S. 405 (2005)...............................................................................................................30

*INS v. Lopez-Mendoza*,
468 U.S. 1032 (1984)..............................................................................................................18

*INS v. St. Cyr*,
533 U.S. 289 (2001)..................................................................................................................6

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ........................................................................8, 9

*Linlor v. Polson*,
    263 F. Supp. 3d 613 (E.D. Va. 2017) ...........................................................14, 20

*Lyttle v. United States*,
    867 F. Supp. 2d 1256 (M.D. Ga. 2012) ...............................................................18

*Madu v. U.S. Att'y Gen.*,
    470 F.3d 1362 (11th Cir. 2006) ...........................................................................6

*Mancha v. Immigration & Customs Enf't*,
    No. 1:06-CV-2650-TWT, 2009 WL 900800 (N.D. Ga. Mar. 31, 2009) ........................26, 27

*Marcantonio v. Dudzinski*,
    155 F. Supp. 3d 619 (W.D. Va. 2015) ..................................................................28

*Mirmehdi v. United States*,
    689 F.3d 975 (9th Cir. 2012) ...........................................................................16

*Mochama v. Zwetow*,
    No. 14-2121-KHV, 2017 WL 36363 (D. Kan. Jan. 3, 2017)...................................................6

*Payton v. New York*,
    445 U.S. 573 (1980).......................................................................................32

*Pearson v. Callahan*,
    555 U.S. 223 (2009).......................................................................................25

*Pellegrino v. U.S. Transp. Sec. Admin*,
    No. 09-5505, 2014 WL 1489939 (E.D. Pa. Apr. 16, 2014), *amended on
    reconsideration on other grounds*, No. 09-5505, 2014 WL 3952936 (E.D. Pa.
    Aug. 12, 2014) ...........................................................................................14

*Pena v. Porter*,
    316 F. App'x 303 (4th Cir. 2009) .......................................................................35

*Plyler v. Doe*,
    457 U.S. 202 (1982).......................................................................................19

*Raub v. Bowen*,
    960 F. Supp. 2d 602 (E.D. Va. 2013) ..................................................................27

*Raub v. Campbell*,
    785 F.3d 876 (4th Cir. 2015) .........................................................................24, 25

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States,*
   945 F.2d 765 (4th Cir. 1991) .................................................4

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) ...........................................27

*Robertson v. Sea Pines Real Estate Cos., Inc.*
   679 F.3d 278 (4th Cir. 2012) .................................................4

*Sanchez v. Sessions,*
   870 F.3d 901 (9th Cir. 2017) ...............................................34

*Saucier v. Katz,*
   533 U.S. 194 (2001) ..............................................................25

*Schneckloth v. Bustamonte,*
   412 U.S. 218 (1973) ..............................................................32

*Singh v. Gonzales,*
   499 F.3d 969 (9th Cir. 2007) .................................................5

*Terry v. Ohio,*
   392 U.S. 1 (1968) ..................................................................30

*United States v. Boone,*
   245 F.3d 352 (4th Cir. 2001) ...............................................32

*United States v. Branch,*
   537 F.3d 328 (4th Cir. 2008) ...............................................30

*United States v. Brignoni-Ponce,*
   422 U.S. 873 (1975).........................................12, 31, 34, 35

*United States v. Cortez,*
   449 U.S. 411 (1981).............................................28, 29, 33

*United States v. De La Cruz,*
   703 F.3d 1193 (10th Cir. 2013) ...........................................31

*United States v. Griffin,*
   589 F.3d 148 (4th Cir. 2009) ...............................................28

*United States v. Martinez-Fuerte,*
   428 U.S. 543 (1976)..............................................................28

*United States v. Moreno-Chaparro,*
   180 F.3d 629 (5th Cir. 1999) ...............................................36

*United States v. Robertson*,
   736 F.3d 677 (4th Cir. 2013) ...................................................................32

*United States v. Sundiata*,
   3 F. Supp. 2d 682 (E.D. Va 1998) .........................................................34

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ...............................................................................19

*United States v. Williams*,
   No. 2:09cr149, 2010 WL 452200 (E.D. Va. Feb. 8, 2010).....................29

*United States v. Windsor*,
   133 S. Ct. 2675 (2013)............................................................................35

*Wilkie v. Robbins*,
   551 U.S. 537 (2007).............................................................................15, 27

*Wilson v. Layne*,
   141 F.3d 111 (4th Cir. 1998) ..................................................................33

*Wright v. North Carolina*,
   787 F.3d 256 (4th Cir. 2015) ....................................................................4

*Yanez-Marquez v. Lynch*,
   789 F.3d 434 (4th Cir. 2015) ..................................................................10

*Young v. City of Mount Ranier*,
   238 F.3d 567 (4th Cir. 2001) ..................................................................22

*Ziglar v. Abbasi*, ............................................................................ *passim*

**Statutes**

8 U.S.C. § 1229(a) .........................................................................................7

8 U.S.C. § 1252(a)(1).....................................................................................5

8 U.S.C. § 1252(b) .........................................................................................5

8 U.S.C. § 1252(b)(9) ............................................................................ *passim*

8 U.S.C. § 1357(a), (c) .................................................................................12

18 U.S.C. §§ 3052, 3107...............................................................................13

**Other Authorities**

8 C.F.R. § 1003.14.........................................................................................7

28 C.F.R. § 50.15(a)(1)-(3) .................................................................................................24

Fourth Amendment ................................................................................................... *passim*

Fifth Amendment ...................................................................................................... *passim*

Eighth Amendment .............................................................................................................21

Federal Rule of Civil Procedure 12(b)(1) .........................................................................4

Federal Rule of Civil Procedure 12(b)(6) .........................................................................4

Federal Rule of Civil Procedure 20 ..................................................................................21

Federal Rule of Civil Procedure 21 ..................................................................................22

U.S. Const. amend. IV ......................................................................................................28

## INTRODUCTION

Plaintiffs allege that several individual federal law enforcement officers violated their constitutional rights by seizing Plaintiffs without any reasonable suspicion of wrongdoing and by conducting home raids without a warrant or consent.  This is exactly the type of conduct the Supreme Court found actionable in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The only difference between the federal law enforcement agents in *Bivens* and those here is the name of the federal agency on their jackets.  The Supreme Court's recent opinion in *Ziglar v. Abbasi*, which narrowed the availability of certain *Bivens* actions against senior government officials, explicitly said that the opinion "is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose."  137 S. Ct. 1843, 1856 (2017).  This is exactly the type of case Plaintiffs bring here.

Granting Defendants' motion to dismiss would allow U.S. Immigration and Customs Enforcement ("ICE") agents to search and seize citizens and suspected non-citizens with impunity, without any concern for clearly established constitutional limits.  Under Defendants' strained reasoning, the only possible remedy available to individuals like Plaintiffs who suffer unconstitutional searches and seizures by ICE agents is the suppression of evidence in a removal proceeding before an immigration judge.  This is not what Congress intended, not what courts have held, and not what the Constitution requires.  Eight Plaintiffs are unable to assert their constitutional claims in immigration court in any way other than through a defensive motion to suppress evidence, which would not provide them any monetary relief or vindication of the constitutional rights that *Bivens* held they have.  Furthermore, one Plaintiff is wholly unable to assert his claims in immigration court because he is not in removal proceedings.  Accordingly, the Court should deny Defendants' motion to dismiss.

1

## BACKGROUND

The allegations in the amended complaint show that Defendants have engaged in a practice of unlawfully seizing and searching males who appear to be of Latino descent, and unlawfully entering those men's homes. On February 8, 2017, in the early morning hours, Plaintiff Germán Velasquez Perdomo had just left his house on his way to work when he was stopped without reasonable suspicion in his driveway in Arlington, Virginia, by four Defendant ICE Agents who identified themselves as "police." Am. Compl. ¶¶ 20–21. The ICE Defendants flashed a photograph of a purported suspect who they referred to as Santo Del Cid and asked if Mr. Velasquez Perdomo knew the man. *Id.* ¶ 21. When he responded that he did not, the agents demanded Mr. Velasquez Perdomo empty his pockets and frisked him. *Id.* ¶¶ 21–22. They questioned him about who was inside his house and, even though they had no warrant, demanded he let them in. *Id.* ¶¶ 22, 24. Mr. Velasquez Perdomo protested, but feeling he had no choice but to obey the agents' commands, he relented. *Id.* ¶¶ 22–23.

Once inside the house, the agents went from room to room, ordering all of the male occupants — Plaintiffs Luis Velasquez Perdomo, Pedro Velasquez Perdomo, Eder Aguilar Aritas, Eduardo Montano Fernández, Nelson Callejas Peña, and José Cárcamo — out of their rooms and detaining them in the living rooms on the first and basement floors. *Id.* ¶¶ 25–43. All of the men are of apparent Latino race or ethnicity, but none of them looks like the alleged target in the photograph shown by Defendants, and Defendants had no reasonable suspicion that any of them had violated the immigration laws of the United States or committed any other violation of U.S. law. *Id.* ¶¶ 10, 20, 26, 27, 38, 39, 42, 54. In the course of detaining the men in the first floor living room, one of the ICE agents asked Mr. Cárcamo if there were any other "Spanish families" in the neighborhood. *Id.* ¶ 46. After approximately one hour of unlawfully detaining the men, Defendants arrested each of them except Mr. Cárcamo. *Id.* ¶¶ 45–46.

2

Nine days later and six miles away, Defendants stopped Plaintiffs Mynor Abdiel Tun-Cos and José Pajarito Saput — both men of apparent Latino race or ethnicity — without reasonable suspicion in the early morning hours outside their apartment as they were pulling out of their parking space to drive to work.  *Id.* ¶¶ 55–59.  Despite having no reasonable, articulable suspicion that Mr. Tun-Cos or Mr. Pajarito Saput had violated any law, Defendants demanded the men produce identification and ordered them out of their car.  Two Defendants ordered Mr. Pajarito Saput to let Defendants into his apartment.  *Id.* ¶ 62.  Mr. Pajarito Saput reasonably believed that he had no choice but to obey the Defendants' command.  *Id.*  At no point did Mr. Pajarito Saput or any other individual give consent for Defendants to enter the apartment, and the agents did not present a warrant and did not have reasonable suspicion that the men had violated any laws.  *Id.* ¶ 59, 62.

Once in the apartment, a Defendant showed Mr. Tun-Cos photos of two young men and asked if he knew them.  Mr. Tun-Cos told the Defendant that the two men are brothers named Wilber and Carmelino Houx-Hernández (the "Houx-Hernández brothers"), and that Mr. Tun-Cos had kicked them out of the apartment long ago because of their drinking.  *Id.* ¶ 63.  The Defendant asked Mr. Tun-Cos if he knew the Houx-Hernández brothers' current contact information, and Mr. Tun-Cos responded truthfully that he did not.  *Id.*  The same Defendant told Mr. Tun-Cos that the Houx-Hernández brothers were "in trouble with the police" but gave no further reasons why Defendants were looking for them.  *Id.* ¶ 63.  Neither Mr. Tun-Cos nor Mr. Pajarito Saput resemble either of the Houx-Hernández brothers.  *Id.* ¶ 64.  Despite Mr. Tun-Cos and Mr. Pajarito Saput's cooperation, and without any reasonable reason for doing so, Defendants arrested and frisked both men.  *Id.* ¶ 65.

## STANDARD OF REVIEW

When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) — which applies here only to Defendants' argument that 8 U.S.C. § 1252(b)(9) strips this Court of jurisdiction — it "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

When assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) — which applies to the balance of Defendants' arguments — a court "must take the complaint's factual allegations as true and draw all reasonable inferences in plaintiffs' favor." *Robertson v. Sea Pines Real Estate Cos., Inc.* 679 F.3d 278, 284 (4th Cir. 2012) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Those allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests" and must be "construed liberally so as to do substantial justice." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440; *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009)) (internal quotation marks omitted).

## ARGUMENT

Defendants' three arguments for dismissal are without merit. First, the Immigration and Nationality Act ("INA") does not remove this Court's jurisdiction over Plaintiffs' claims because Plaintiffs are not challenging a final order of removal and their claims are wholly collateral to the removal process. Second, Plaintiffs' claims are properly redressable under *Bivens* because they fit squarely within the context of cases for which *Bivens* remedies have been recognized, and

4

there are no "special factors" that counsel hesitation against implying a *Bivens* remedy under these circumstances.  Finally, Plaintiffs have pleaded with sufficient specificity that Defendants violated clearly established constitutional standards and therefore are not entitled to qualified immunity.

## I.   The INA Does Not Remove This Court's Jurisdiction Over Plaintiffs' Claims.

### A.  Plaintiffs do not seek review of a removal order, so the INA does not apply here.

Defendants' motion omits key pieces of the INA in an attempt to argue that 8 U.S.C. § 1252(b)(9) bars Plaintiffs' claims.  The opening line of § 1252(b) states that its subsections apply only "[w]ith respect to review of an order of removal under subsection (a)(1)."  8 U.S.C. § 1252(b).  Subsection (a)(1), in turn, addresses only "[j]udicial review of a final order of removal."  8 U.S.C. § 1252(a)(1).  Accordingly, § 1252(b)(9) bars *only* district court review of a final order of removal.  As the Ninth Circuit has noted, "[t]he title of § 1252 is 'Judicial review of orders of removal.'  Indeed, the entire section is focused on orders of removal."  *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).  Here, no order of removal exists as to any Plaintiff, and Plaintiffs are not seeking judicial review of any order of removal.  Section 1252(b)(9)'s jurisdictional bar is therefore inapplicable.

Although the Fourth Circuit has not addressed the scope of § 1252(b)(9), other circuits have held that § 1252(b)(9) unambiguously applies only to review of final removal orders.  For example, in *Singh*, the Ninth Circuit held that "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal."  *Id.* at 978.  Similarly, the Third Circuit has held that "Section 1252(b)(9) . . . requires *only* that, *when there is an order of removal* under subsection (a)(1), review of any issues *related to that order* must be consolidated into a single petition for review and cannot be brought piecemeal."  *Chehazeh v. Att'y Gen. of the U.S.*, 666 F.3d 118, 131 (3d Cir. 2012) (emphases

5

added).  Thus, the Third Circuit held that a plaintiff's challenge to the reopening of removal proceedings that had been resolved in his favor was not barred because, as is the case here, the plaintiff was "not seeking review of any order of removal — as there has been no such order with respect to him."  *Id.* at 133.  The Eleventh Circuit agrees.  "Because section 1252(b)(9) applies only '[w]ith respect to review of an order of removal,' and this case does not involve review of an order of removal, we find that section 1252(b)(9) does not apply to this case." *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) (alteration in original) (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)).  Although Defendants cite the First Circuit's decision in *Aguilar v. U.S. Immigration & Customs Enforcement*, 510 F.3d 1 (1st Cir. 2007), to support their argument that § 1252(b)(9) bars Plaintiffs' claims, "[t]he reasoning of *Aguilar*, however, appears to conflict with the Supreme Court's explicit instruction in *St. Cyr*."  *Chehazeh*, 666 F.3d at 133 (citing *St. Cyr*, 533 U.S. at 313).

Moreover, several district courts have held that § 1252(b)(9) does not bar claims like Plaintiffs' claims here.  For example, in *Diaz-Bernal v. Myers*, the plaintiffs brought *Bivens* claims against several ICE defendants alleging unconstitutional seizures and arrests, much like Plaintiffs do here.  *See* 758 F. Supp. 2d 106, 114 (D. Conn. 2010).  The court held that § 1252(b)(9) did not bar the plaintiffs' claims, even though a final order of removal existed, because the plaintiffs' claims did not arise out of the final order.  *See id.* at 123.  Other district courts have reached a similar conclusion.  *See e.g.*, *Mochama v. Zwetow*, No. 14-2121-KHV, 2017 WL 36363, at *6 (D. Kan. Jan. 3, 2017) (holding that § 1252(b)(9) does not bar claims of unlawful solitary confinement and retaliation); *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1045–46 (C.D. Cal. 2010) (holding that § 1252(b)(9) does not bar a *habeas* petition alleging violations of the INA, the Fifth Amendment, and the Rehabilitation Act).  Accordingly,

6

§ 1252(b)(9) does not bar Plaintiffs' claims of unconstitutional seizures and home raids because the claims do not arise out of a final order of removal.

**B. Plaintiffs' claims are independent of and collateral to the removal process and thus present no logistical concerns that would warrant dismissal.**

Section 1252(b)(9) does not bar Plaintiffs' claims for the additional and separate reason that they are independent of and collateral to the removal process. The bottom line is that Plaintiffs' claims seek no relief whatsoever relating to Plaintiffs' removal proceedings and challenge no conduct other than Defendants' unconstitutional seizures and home invasions — conduct that occurred prior to the issuance of a Notice to Appear and before the commencement of removal proceedings against Plaintiffs. Plaintiffs' claims in the case, based on Defendants' unconstitutional conduct, would exist even if the government had declined to initiate removal proceedings.[1]

Section 1252(b)(9) provides in relevant part that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Courts have held that "the phrase 'arising from' in section 1252(b)(9) was intended to 'exclude claims that are independent of, or wholly collateral to, the removal process.'" *Diaz-Bernal*, 758 F. Supp. 2d at 122 (quoting *Aguilar*, 510 F.3d at 11). Removal proceedings are not initiated until ICE serves a Notice to Appear. *See* 8 U.S.C. § 1229(a); 8 C.F.R. § 1003.14 ("Jurisdiction vests and proceedings before an Immigration Judge commence, when a charging document [(the Notice to Appear)] is filed with the Immigration Court by [ICE]."). Here, ICE did not serve Plaintiffs with Notices to Appear until several hours

---

[1] Mr. Cárcamo is not in immigration proceedings so, as Defendants admit, their § 1252(b)(9) argument is wholly inapplicable to him. *See* Defs.' Mem. at 6 n.3.

after the initial seizures and home invasions.  These notices were served not at the location of the

seizures and home invasions, but at an ICE office several miles away.  Plaintiffs are not

challenging any aspect of the removal process, such as their detention and processing at an ICE

facility, or any procedural aspect of their immigration proceedings.  Rather, Plaintiffs are

challenging only the initial seizure and home invasion conducted by ICE agents without

reasonable suspicion or consent — actions that are wholly unrelated to and happened before any

removal proceedings were commenced against Plaintiffs.

The plaintiffs in the cases Defendants cite that barred claims under § 1252(b)(9)

generally were attempting to challenge actions that were much more intertwined with, or

occurred during, the removal proceedings.  *See J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)

(plaintiffs' claims related to right to counsel in removal proceedings); *Aguilar*, 510 F.3d 1

(plaintiffs' claims related to detention conditions and right to counsel in removal proceedings);

*Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005) (plaintiff was attempting to challenge final

order of removal).[2]  Even in these cases, courts recognized that § 1252(b)(9) has exceptions for

claims, such as Plaintiffs' claims challenging the initial seizures, which occurred prior to the

commencement of removal proceedings.  For example, the court in *J.E.F.M* explained that

"§ 1252(b)(9) has built-in limits" by excluding, and therefore not barring, "any claim that does

not arise from removal proceedings."  837 F.3d at 1032.  The court highlighted that §§

---

[2] Defendants also cite an unpublished District of Minnesota opinion, *Arias v. U.S. Immigration & Customs Enforcement*, No. 07-1959 ADM/JSM, 2008 WL 1827604 (D. Minn. Apr. 23, 2008). Beside the fact that it is an unpublished district court opinion from another circuit, the case is of little value here because, in addition to challenging the initial seizure, the plaintiffs challenged aspects of the removal process, such as alleged violations of their right-to-counsel and right against self-incrimination.  *Id.* at *4.  The court improperly lumped the claims together in a brief discussion of § 1252(b)(9).  *See id.* at *6.  Here, Plaintiffs are challenging *only* the initial seizure and home invasion, conduct wholly unrelated to the removal proceedings.  Moreover, the court relied solely on *Aguilar*, the reasoning of which, as discussed above, is incorrect.

1252(a)(5) and 1252(b)(9) only "channel judicial review *over final orders of removal* to the courts of appeals." *Id.* at 1031 (emphasis added); *see also Aguilar*, 510 F.3d at 11 (holding that § 1252(b)(9)'s bar "exclude[s] claims that are independent of, or wholly collateral to, the removal process," and implying that *Bivens* claims fall into this exception). As the First Circuit commented in *Aguilar*, "Congress knows how to bar claims in the immigration context when it desires to do so," *id.* at 11 n.2, and it did not do so in § 1252(b)(9) for claims seeking redress for wrongful conduct that is separate from and antecedent to removal proceedings.

Plaintiffs' claims here are wholly separate from their removal proceedings, and the outcome of the removal proceedings is wholly separate from this case. Plaintiffs are seeking monetary and other substantive relief for violations of their constitutional rights. *See* Am. Compl. at 21 (listing the "Relief Requested"). In the removal proceedings, Plaintiffs can seek only suppression of evidence. This situation is similar to that in *Diaz-Bernal*. As the court explained in *Diaz-Bernal*, "although the plaintiffs here could have — and for the most part, did — raise constitutional arguments before the immigration judge, the only potential remedy in that forum was the suppression of any evidence obtained from their allegedly illegal arrests." 758 F. Supp. 2d at 123. The court held that "because the immigration judge could not have afforded the plaintiffs relief for the constitutional claims raised in this action, those claims do not arise out of the order of removal, and jurisdiction is not barred by section 1252(b)(9)." *Id.* The court emphasized this point, repeating that the immigration judge was unable to afford the plaintiffs "substantive relief on their constitutional claims" because "[t]he most the immigration judge could do was suppress the illegally obtained evidence." *Id.* The same is true here. Moreover, the legal standard the immigration judge will use to assess Plaintiffs' motion for suppression is different than the legal standard this Court will use to assess Plaintiffs' constitutional claims. In

the removal proceedings, current Fourth Circuit case law allows suppression only for "egregious violations of the Fourth Amendment."  *See Yanez-Marquez v. Lynch*, 789 F.3d 434, 450 (4th Cir. 2015).  Conversely, in this action, Defendants can be held liable if a jury finds that they violated clearly established Fourth Amendment principles.

In short, this Court and the immigration court will be addressing different matters — substantive claims for relief here versus whether removal is proper under admissible evidence there — relying on different legal standards.  Defendants' concerns regarding uncertainty and a lack of uniformity therefore are unfounded, and § 1252(b)(9) does not bar Plaintiffs' claims.

## II.     The Complaint States a Valid *Bivens* Claim.

### A.  This case would not extend *Bivens* into a new context.

Defendants assert in their motion to dismiss that Plaintiffs are "ask[ing] this Court to extend *Bivens* into a new context."  Defs.' Mem. at 16.  That is plainly incorrect, however, as the Supreme Court's recent decision in *Abbasi* shows.  The Court clarified in *Abbasi* that "[t]he proper test for determining whether a case presents a new *Bivens* context" is whether the case is "different in a meaningful way from previous *Bivens* cases."  137 S. Ct. at 1859.  The Court recognized a number of non-exhaustive differences that prove instructive in making this determination:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.  Most importantly, however, the Court acknowledged that nothing in its decision in *Abbasi* was "intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose."  *Id.* at 1856.  Indeed, the Court continued, "[t]he

settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the

undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that

sphere."  *Id.* at 1857.

The essential factual and legal ingredients alleged by Plaintiffs in their amended

complaint are similar in all material respects to those that were at play in *Bivens*:  a team of

federal agents acting under color of federal authority seized Plaintiffs, conducted a warrantless

search of their homes, and arrested them, which gave rise to claims of unreasonable search and

seizure in violation of the Constitution.  *See Bivens*, 403 U.S. at 389.  This puts Plaintiffs' claims

squarely within the well-established bounds of *Bivens*.  The fact that the *Bivens* defendants were

narcotics agents who allegedly used unreasonable force in the plaintiff's arrest does not make

that case "different in a meaningful way" from this one.  Because the core elements of this case

arise out of unconstitutional searches and seizures by federal law enforcement officers, and

because the *Abbasi* Court expressly held that the *Bivens* remedy remains readily available

(indeed, "necess[ary]") in that context, *see* 137 S. Ct. at 1856, the minor factual distinctions

between this case and *Bivens* are inconsequential from a legal perspective, *see id.* at 1865.  As

the Court explained, "Some differences . . . will be so trivial that they will not suffice to create a

new *Bivens* context."  *Id.*

Taken together, the *Abbasi* factors — the majority of which Defendants avoid discussing

in their motion — illustrate that Plaintiffs' case is not an extension of *Bivens* to a new context.

The instant case, like *Bivens* itself, involves claims against line-level law enforcement officers.

Courts considering *Bivens* challenges have commonly distinguished between suits against on-

the-ground personnel and those against higher-up superiors, finding the former are squarely

within the established *Bivens* context.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001)

(observing that "[t]he purpose of *Bivens* is to deter individual federal officers from committing

constitutional violations"); *cf. Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL

5013230, at *6 (E.D. Va. Nov. 1, 2017) (finding that the plaintiffs' claims presented a new

*Bivens* context because, *inter alia*, "*Bivens* only allowed the plaintiff to sue line-level FBI agents,

whereas plaintiffs wish to sue a former Attorney General and Postmaster General").  Indeed, like

the plaintiffs in *Bivens*, Plaintiffs challenge the specific actions of individual law enforcement

officials.  Plaintiffs do not attack "general" or any other policy imperatives determined by

agency leadership.  *Cf. id.* (concluding that plaintiffs' claims constituted an extension of *Bivens*

in part because plaintiffs' claims involve[d] "a different level of generality (broad policy

decisions rather than individual unconstitutional actions)").

      In addition, the constitutional rights at issue in the instant case are identical to those

which were directly addressed in *Bivens* and subsequent Supreme Court cases applying *Bivens*:

the right to be free from unreasonable searches and seizures under the Fourth Amendment and

the right to be free from unconstitutional discrimination under the Fifth Amendment.  *See Bivens*,

403 U.S. at 392; *see also Davis v. Passman*, 442 U.S. 228, 242 (1979) ("[A] cause of action may

be implied directly under the equal protection component of the Due Process Clause of the Fifth

Amendment . . . .").  And relevant judicial guidance makes clear that an individual's apparent

race, ethnicity, or national origin alone is not sufficient to provide an ICE agent with a

reasonable basis for stopping that individual.  *See United States v. Brignoni-Ponce*, 422 U.S.

873, 885–87 (1975).

      Notwithstanding Defendants' argument to the contrary, there is no meaningful distinction

between the narcotics agents' authority in *Bivens* and Defendants' authority in this case.  Both

sets of agents have the power to stop, search, and arrest, *compare* 8 U.S.C. § 1357(a), (c)

(describing the powers of ICE agents), *with* 18 U.S.C. §§ 3052, 3107 (describing the powers of FBI agents), and they must both hew to the same constitutional standards dictated by Fourth Amendment jurisprudence.  *See Bivens*, 403 U.S. at 392 (the Fourth Amendment guarantees the "absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority").  Nothing in *Abbasi* suggests that the agency name on Defendants' jackets changes the framework under which their conduct must be evaluated.

Plaintiffs' case also does not pose any risk of disruptive intrusion by the Judiciary into the functioning of the other branches of government.  In *Abbasi*, the petitioners initiated a challenge against confinement conditions imposed on aliens detained for immigration violations pursuant to a high-level executive policy created in the wake of the September 11 terrorist attacks, which required an examination of sensitive national security issues that are within the province of Congress and the President to decide.  *See* 137 S. Ct. at 1861.  By contrast, the instant case does not demand an inquiry into the affairs of the Legislative or Executive branches — rather, Plaintiffs have filed a damages suit that simply seeks to hold the individual Defendant ICE agents accountable for their individual actions in violation of Plaintiffs' constitutional rights. The filing of such a lawsuit is no more disruptive of the functions of the other branches than was the suit against the line officers in *Bivens* itself, which the Supreme Court said maintains its "continued force" and "necessity" in the "search-and-seizure context in which it arose."  *Id.* at 1856; *see also id.* at 1882 (Breyer, J. dissenting) ("All damages actions risk disrupting to some degree future decisionmaking by members of the Executive or Legislative Branches.  Where this Court has authorized *Bivens* actions, it has found that disruption tolerable, and it has explained why disruption is, from a constitutional perspective, desirable.").

There also are no "special factors" present in the instant case that the Court in *Bivens* did not consider. *Abbasi* reaffirmed the cognizability of run-of-the-mill unreasonable search-and-seizure claims, *see* 137 S. Ct. at 1856, and through such recognition, the Supreme Court has already decided that the concerns Defendants raise in their motion about delay, cross-examination, and floodgate litigation are inferior to the interests of those whose constitutional rights have been trampled by government actors. Put simply, Plaintiffs' suit no more risks chilling appropriate law enforcement activities than did *Bivens* itself. *See Pellegrino v. U.S. Transp. Sec. Admin*, No. 09-5505, 2014 WL 1489939, at *13 (E.D. Pa. Apr. 16, 2014) ("Deterrence of federal officials from committing constitutional violations is integral to the existence of *Bivens* actions." (citing *Butz v. Economou*, 438 U.S. 478, 505 (1978))), *amended on reconsideration on other grounds*, No. 09-5505, 2014 WL 3952936 (E.D. Pa. Aug. 12, 2014).

Indeed, Judge Cacheris of this Court recently noted in response to similar arguments concerning the appropriateness of a proposed *Bivens* remedy in the context of Transportation Security Administration ("TSA") security screenings that "[t]he risk of deterring legitimate law enforcement activity through personal liability . . . is not unique to this context." *Linlor v. Polson*, 263 F. Supp. 3d 613, 623 (E.D. Va. 2017). Judge Cacheris went on to point out that "[m]any of Defendant's observations about the nature of the TSA's work — for example, that TSA officers must make split second decisions in a fast moving environment to protect public safety — are no less applicable to the work of other federal agents who have successfully contended with *Bivens* liability." *Id.* The same logic applies with equal force here.

Because Plaintiffs' claims do not arise in a new context, the relief sought by Plaintiffs clearly is available under *Bivens*.

14

**B. Even if Plaintiffs' claims could be construed as extending the *Bivens* remedy to the immigration context, no special factors exist that counsel hesitation to apply *Bivens* in this context.[3]**

Notwithstanding Defendants' fallback argument to the contrary, there are no special

factors in the immigration context that warrant denying Plaintiffs the remedy they seek through

this lawsuit.  "[A] *Bivens* remedy will not be available if there are special factors counselling

hesitation in the absence of affirmative action by Congress."  *Abbasi*, 137 S. Ct. at 1857 (quoting

*Carlson v. Green*, 446 U.S. 14, 18 (1980)) (internal quotation marks omitted).  The phrase

"special factors counselling hesitation" evades clear definition.  *Id.*  However, Supreme Court

precedent at the very least requires the consideration of the following issues in connection with

any special factors analysis:  (1) whether "any alternative, existing process for protecting the

interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new

and freestanding remedy in damages"; (2) if not, whether there are "any special factors

counselling hesitation before authorizing a new kind of federal litigation."  *Wilkie v. Robbins*,

551 U.S. 537, 550 (2007) (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)) (internal quotation

mark omitted).  In this case, there is no alternative process for protecting Plaintiffs' interests, and

there are no special factors that would counsel hesitation to apply *Bivens* here.

> 1.  <u>There is no alternative, existing process by which Plaintiffs can vindicate their constitutional rights.</u>

Defendants first contend that the INA is a comprehensive statutory scheme that precludes

the implication of a damages remedy in the immigration enforcement context.  *See* Defs.' Mem.

---

[3] For the sake of clarity, we note here that the "special factors" discussed in this Section II.B are distinct from those discussed in Section II.A.  The "presence of potential special factors that previous *Bivens* cases did not consider" described in Section II.A is merely one among many nonexhaustive factors that *Abbasi* identified as indicative of whether a particular case constitutes an extension of *Bivens* to a new context.  If the Court determines that the case does in fact constitute such an extension, it must proceed to determine whether "special factors" counsel hesitation, which requires consideration of the two issues described in *Wilkie v. Robbins* below.

at 17–19.  In support of this proposition, Defendants rely principally on three cases in which

*Bivens* claims were deemed foreclosed in light of the availability of remedies provided under the

INA.  *See Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194 (11th Cir. 2016); *De La*

*Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015); *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir.

2012).  These decisions are inapposite, however.  *Alvarez* and *Mirmehdi* are readily

distinguishable because the violations prompting the plaintiffs' suits in those cases occurred

while they were in detention and pending removal, circumstances that clearly fall within the

ambit of the INA.  *See Alvarez*, 818 F.3d at 1208–10 (concluding that no *Bivens* remedy was

available where plaintiff brought a *Bivens* action against government officials based on the fact

that ICE agents lodged a detainer against him while his removal was pending); *Mirmehdi v.*

*United States*, 689 F.3d at 982–83 (holding that *Bivens* did not provide remedy for

undocumented aliens to sue federal agents for monetary damages for wrongful detention pending

deportation).

The claim in *De La Paz* arose from pre-detention stops and arrests of undocumented

aliens by Customs and Border Protection agents.  *See* 786 F.3d at 369.   The court's conclusion

that the INA precluded a *Bivens* remedy in the immigration context rested in large part on the

court's view that aliens are already entitled to extensive procedural protections — including

suppression of evidence — in removal proceedings.[4]  *See id.* at 375–77.  This reasoning is

flawed:  the availability of certain limited procedural protections in removal proceedings does

not demonstrate that a comprehensive statutory scheme precluding a *Bivens* remedy exists where

---

[4] The court's other principal argument — that Congress's frequent amendments to the INA
evince an intent to preclude a *Bivens* remedy — fails for the reasons described in Section II.B.2.
*See infra* Section II.B.2. at 20–21.

the conduct challenged by the plaintiff occurred *prior to* such proceedings and the particular *substantive* relief sought by the plaintiff is not available in immigration court.

The District of Connecticut's logic in *Diaz-Bernal* stands on much firmer ground. *Diaz-Bernal* involved, *inter alia*, Fourth Amendment claims brought by a group of plaintiffs who were the subject of an early-morning ICE raid and whose homes were unlawfully entered by the agents conducting the raid. *See* 758 F. Supp. 2d at 111, 113. Like Defendants here, the individual defendants in *Diaz-Bernal* argued that the plaintiffs' *Bivens* claims were foreclosed by the INA because the plaintiffs could raise their constitutional challenges in their removal proceedings. *See id.* at 128. The court rejected that argument, however, concluding that "[a]lthough the plaintiffs . . . can raise their constitutional issues before the immigration judge, they can only do [so] by seeking to suppress evidence, and not by seeking affirmative relief." *Id.* Furthermore, the court observed, the INA "does *not* provide a remedial scheme for violations committed by immigration officials *outside* of removal proceedings." *Id.* (second emphasis added).

Like the plaintiffs in *Diaz-Bernal*, the eight Plaintiffs who are currently in removal proceedings have asserted Fourth Amendment claims against individual ICE agents for conduct committed prior to the commencement of such proceedings and seek specific relief that is unavailable in such proceedings. Although the INA offers aliens in removal proceedings various protections, it does not provide Plaintiffs with affirmative remedies — such as those sought here — through which to vindicate their *constitutional* rights. *See Malesko*, 534 U.S. at 74 (recognizing that the "core purpose" of *Bivens* is to "deter[] individual officers from engaging in *unconstitutional wrongdoing*" (emphasis added)). Indeed, the Supreme Court itself has suggested that the most relevant remedy available in the immigration context — namely,

suppression of unlawfully obtained evidence — may not deter future unlawful immigration enforcement action. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984) (noting that "several . . . factors significantly reduce the likely deterrent value of the exclusionary rule in a civil deportation proceeding," including that "regardless of how the arrest is effected, deportation will still be possible when evidence not derived directly from the arrest is sufficient to support deportation").

Mr. Cárcamo in particular, who is not in removal proceedings, has *no* alternative avenue for *any* relief other than this pending *Bivens* action. As Defendants concede in their motion, *see* Defs.' Mem. at 17 n.7, the supposed comprehensive nature of the INA is entirely irrelevant to his claims.[5] *See Lyttle v. United States*, 867 F. Supp. 2d 1256, 1276 (M.D. Ga. 2012) (holding that the existence of the INA's remedial scheme was not sufficient to foreclose the availability of a *Bivens* remedy because the INA fails to "provide 'meaningful safeguards or remedies' for a U.S. citizen like [the plaintiff]." (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988))); *Argueta v. U.S. Immigration & Customs Enf't*, No. 08-1652 (PGS), 2009 WL 1307236, at *17 (D.N.J. May 7, 2009) (holding that plaintiff with Temporary Protection Status who was detained for 36 hours and later released retained the right to bring a *Bivens* claim in federal court for constitutional violations because "it [was] not clear how she could even be involved in the administrative process outlined in the INA"). Defendants' concession also undermines their arguments regarding the other Plaintiffs: constitutionally speaking, there is no difference between Mr. Cárcamo and his fellow Plaintiffs because they all reside within the United States

---

[5] Contrary to Defendants' allegations, *see* Defs.' Mem. at 19 n.9, Mr. Cárcamo is a United States citizen. *See* Ex. 1, José Cárcamo Passport. The fact that Defendants failed even to accurately describe Mr. Cárcamo's legal status — information that is readily ascertainable to them — gives further credence to Plaintiffs' argument that Defendants failed to execute their investigatory functions with due diligence.

and have established substantial connections therewith, so the Court should view their plights in an identical light. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (noting that aliens are entitled to constitutional protections, which include those afforded under the Fourth Amendment, so long as they "have come within the territory of the United States and developed substantial connections with this country"); *see also Plyler v. Doe*, 457 U.S. 202, 210 (1982) (granting undocumented aliens constitutional protections because "[w]hatever his status under the immigration laws, an alien is surely a 'person' in any ordinary sense of that term"). Thus, the INA is equally irrelevant to all Plaintiffs' claims.

2. There are no additional "special factors" that would counsel hesitation against implying a *Bivens* remedy under these circumstances.

Defendants also assert that other "special factors" counsel hesitation in this context. *See* Defs.' Mem. at 19–27. Specifically, Defendants contend that separation-of-powers concerns, administrability problems, and the practical consequences on qualified immunity of allowing Plaintiffs' suit to proceed, counsel against implying a remedy under *Bivens*. *See id.*

Defendants have failed to demonstrate how Plaintiffs' case implicates any of those concerns. For one thing, Plaintiffs' claims do not raise any separation-of-powers concerns with respect to the Executive Branch. *Abbasi* involved a full frontal attack against the United States' alien detention policy in the aftermath of September 11, and named as defendants several federal executive officials and detention facility wardens. *See* 137 S. Ct. at 1851–52. In rejecting the plaintiffs' *Bivens* argument, the Court emphasized that the plaintiffs' claims, if allowed to proceed, would encroach upon the unique prerogatives of the Executive branch. *See, e.g.*, *id.* at 1858 (discussing "the formal policy adopted by the Executive Officials in the wake of the September 11 attacks"); *id.* at 1860 (noting that plaintiffs challenged a "high-level executive policy"); *id.* at 1860–61 (cautioning that "the discovery and litigation process would either

19

border upon or directly implicate the discussion and deliberations that led to the formation of the policy in question").

By contrast, Plaintiffs' grievances are aimed only at the individual line ICE agents directly responsible for violating their constitutional rights, *not* at any greater policy priorities. *See Linlor*, 263 F. Supp. 3d at 625 (explaining that special factors did not counsel hesitation because the cases presented "a relatively simple, discrete question of whether a federal officer applied excessive force during a Fourth Amendment search"); *see also FDIC v. Meyer*, 510 U.S. 471, 485 (1994) ("[T]he purpose of *Bivens* is to deter *the officer*.").  The fact that Defendants are ICE agents does not turn an otherwise routine search-and-seizure case into an inquiry into loosely construed "immigration" or "national security" issues.  *See Linlor*, 263 F. Supp. 3d at 623 (rejecting argument that *Bivens* action to redress alleged excessive force at airport implicates national security because such argument "does little to tie specific national security concerns to the context under consideration" and "rests primarily upon generalizations about the *sui generis* nature of the airport setting").

Congress's authority over immigration matters also is not implicated by Plaintiffs' suit because Plaintiffs "allege independent constitutional harms that were committed against them *prior to* the commencement of removal proceedings."  *Diaz-Bernal*, 758 F. Supp. 2d at 129 (emphasis added); *see also id.* ("Although Congress does have great control over immigration, including over removal proceedings, that does not mean that Congress has great control over *all* claims brought by immigrants.").  Defendants make much of the fact that Congress has for years actively legislated in the immigration arena but has never provided an express damages remedy in the INA, and they argue that the absence of such an express remedy is indicative of Congress's intent.  *See* Defs.' Mem. at 21.  In each of the three cases in which the Supreme

20

Court has implied damages remedies under the Constitution, however, the Court determined that

the absence of an explicit statutory prohibition barring monetary relief should be regarded as a

sign that such remedy remains available.  *See Carlson*, 446 U.S. 14, 19 (1980) (observing, in

support of implied damages remedy for Eighth Amendment prisoner mistreatment claims, that

there is "nothing in the Federal Tort Claims Act . . . or its legislative history to show that

Congress meant to pre-empt a *Bivens* remedy"); *Davis*, 442 U.S. at 247 (emphasizing, in support

of implied damages remedy for Fifth Amendment Due Process claims, that there was "no

evidence . . . that Congress meant . . . to foreclose alternative remedies available to those not

covered by the statute"); *Bivens*, 403 U.S. at 397 (permitting implication of damages remedy in a

Fourth Amendment search-and-seizure context where the Court had "no explicit congressional

declaration that persons injured by a federal officer's violation of the Fourth Amendment may

not recover money damages from the agents").

Defendants argue nonetheless that this Court should regard Plaintiffs' amended complaint

as an implicit challenge to Executive Branch policy and priorities based on references in

Plaintiffs' original complaint to the "Trump Administration," "collateral arrests," and statements

made by high-level government officials and on Plaintiffs' opposition to Defendants' motion to

strike the Arlington Plaintiffs or sever their claims under Federal Rules of Civil Procedure 20

and 21.  *See* Defs.' Mem. at 22–23.  Plaintiffs' original complaint, just like their amended

complaint, clearly sought relief only from the individual ICE agents who directly violated

Plaintiffs' constitutional rights.  *See generally* Compl.  Yet even if certain of the allegations in

Plaintiffs' original complaint could be construed as an attack against high-level policy and/or

officials, those allegations are no longer part of this case.  *All* of the allegations in the original

complaint — including those with which Defendants have taken apparent issue — have been

wholly superseded and nullified by the allegations in Plaintiffs' amended complaint. *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (quoting *In re Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)) (internal quotation marks omitted)); *Crews v. Virginia*, No. 1:16cv407(JCC/JFA), 2016 WL 4705143, at *3 (E.D. Va. Sept. 8, 2016) ("Plaintiff's prior 'Amended Complaint' has been superseded and effectively nullified by the subsequent filing of his Second Amended Complaint.").

        In addition, Defendants' argument that Plaintiffs' opposition to their Rule 20 and 21 motion reveal an intent to challenge policy — simply because the opposition notes that both operations were handled by ICE's Washington Field Office and cites certain cases that involved challenges to governmental or corporate action, *see* Reply in Supp. of Defs.' Mot. to Sever at 7–8 — is meritless.  These facts and cases were cited *solely* for the purpose of demonstrating why joinder of the Arlington Plaintiffs and their claims was appropriate; Plaintiffs did not make any arguments in their opposition concerning the constitutionality of immigration enforcement policies, patterns, or practices attributable to any government entity.  *See generally* Pls.' Mem. in Resp. to Defs.' Mot. to Sever.   In any event, because Plaintiffs' opposition to Defendants' Rule 20 and 21 motion was neither attached to nor incorporated in the amended complaint, this Court is not permitted to consider the sufficiency of any arguments made in such opposition for the purposes of deciding Defendants' motion to dismiss.  *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.  Accordingly, Defendants' contention that the allegations in Plaintiffs' original complaint and arguments in Plaintiffs' opposition to Defendants' Rule 20 and 21 motion bar Plaintiffs' *Bivens* claims is entirely without foundation.  Lest there be any doubt, Plaintiffs affirm that they are not challenging or seeking any relief regarding any Executive or Legislative policy.

Defendants' cautionary statements about the administrability of granting Plaintiffs the relief they do seek are similarly unfounded.  Defendants assert that inferring a damages remedy in the circumstances presented by this case will "slow down the streamlined removal process that Congress has established," "open the floodgates of litigation against ICE officials enforcing immigration laws," and "impose an intolerable administrative burden on the immigration enforcement system."  Defs.' Mem. at 23–24 (quoting *Rajah v. Mukasey*, 544 F.3d 427, 447 (2d Cir. 2008)).  Yet Defendants have presented no evidence in support of these speculative concerns.  Indeed, eight Plaintiffs' removal proceedings continue unabated.  The same administrability challenges alleged by Defendants are inherent in *any Bivens* action, and yet the Supreme Court in *Abbasi* reaffirmed the vitality — indeed, the necessity — of *Bivens* actions in the search-and-seizure context.  *See* 137 S. Ct. at 1856.

Finally, Defendants complain that Plaintiffs' suit "may force the Government to decide between on the one hand pursuing immigration removal proceedings against unlawfully present aliens, or on the other, forcing line-level ICE officials who face potential personal liability to effectively forego their entitlement to a qualified immunity defense by subjecting them to cross-examination in an evidentiary hearing," without the aid of their personal attorneys.  Defs.' Mem. at 25–26.  While Plaintiffs vigorously deny the availability of qualified immunity as a defense here, *see infra* Section III at 24–36, Defendants of course may attempt to invoke such protection. Indeed, Defendants *have done just that* in their motion.  *See* Defs.' Mem. at 27–32.  The risk associated with pursuing immunity versus testifying at a removal hearing is a risk implicit in *Bivens*, which remains good law in the search-and-seizure context.  *See Abbasi*, 137 S. Ct. at 1856.  Furthermore, this is the risk that any agent runs any time she testifies, because a plaintiff can always file a *Bivens* suit after the testimony is given, and there is ample time within which to

file such a suit. *See Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 860 n.27 (E.D. Va. 2016) (noting that *Bivens* actions arising in Virginia are subject to a two-year statute of limitations).  As for Defendants' alleged representational concerns, these too are without basis. Defendants are entitled to request government counsel in connection with their potential testimony in Plaintiffs' removal proceedings.  *See* 28 C.F.R. § 50.15(a)(1)-(3).  Whether or not this case proceeds has no bearing on whether or not Defendants will be called to testify in the removal proceedings.

Accordingly, should this Court determine that Plaintiffs' case presents an extension of *Bivens*, the foregoing reasons demonstrate that special factors do not counsel in favor of withholding a *Bivens* remedy from Plaintiffs.

**III.    Defendants Are Not Entitled to Qualified Immunity.**

The Defendant ICE Agents are not entitled to qualified immunity because the amended complaint alleges that they violated Plaintiffs' clearly established Fourth and Fifth Amendment rights.  Qualified immunity protects government officials from civil damages liability to the extent "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Government officials are entitled to qualified immunity with respect to "'discretionary functions' performed in their official capacities." *Abbasi*, 137 S. Ct. at 1866 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  Because "a reasonably competent public official should know the law governing his conduct," *Harlow*, 457 U.S. at 819, qualified immunity is designed only to protect law enforcement officers from "bad guesses in gray areas," *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (quoting *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998)).  Public

officials are liable "for transgressing bright lines." *Id.* (quoting *S.P.*, 134 F.3d at 266) (internal quotation mark omitted).

A qualified immunity defense requires two components.  First, the Court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the Court must consider "whether the [constitutional] right was clearly established" at the time of violation.  *Id.*  Plaintiffs bear the burden of proof to plead facts sufficient to establish a constitutional violation, whereas Defendants bear the burden of proof with respect to whether the right at issue was clearly established at the time of the violation.  *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007).  The court may consider the two prongs in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court should deny Defendants' request for qualified immunity because the amended complaint demonstrates that each Defendant personally violated Plaintiffs' clearly established Fourth and Fifth Amendment rights.

### A. Plaintiffs sufficiently allege that each individual Defendant ICE agent personally participated in the violations of Plaintiffs' clearly established Fourth and Fifth Amendment rights.

Defendants assert in their motion to dismiss that the Arlington Plaintiffs' Fourth and Fifth Amendment claims fail because the amended complaint does not allege which Defendants, and how each Defendant, personally participated in the February 8 incident.  To sufficiently plead a *Bivens* claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Plaintiffs' amended complaint clearly alleges that each Defendant ICE agent personally participated in the violations of Plaintiffs' Fourth and Fifth Amendment rights, regardless of Defendants' passing assertions otherwise.

25

Defendants' attempted parsing of the amended complaint ignores the overarching allegations made in it:  the same team of Defendant ICE agents committed the same constitutional violations within a nine-day period under essentially the same circumstances.  *See* Am. Compl. ¶¶ 2, 18.[6]  Plaintiffs brought claims against the five specific agents whose names appeared on the I-213 Forms of Mr. Tun-Cos, Mr. Pajarito Saput, and another individual arrested along with these Plaintiffs in the February 17 incident.  Plaintiffs allege that *all* of these Defendants participated in the February 8 incident as well.  *See id.* ¶ 18.  Defendants' argument that the amended complaint fails to allege participation by all Defendants therefore is without merit.

Defendants' assertion that Plaintiffs are required to allege the specific actions undertaken by each Defendant is similarly misguided.  Courts have allowed *Bivens* claims to proceed where plaintiffs have had no way of attributing actions to specific defendants before discovery.  *See Mancha v. Immigration & Customs Enf't*, No. 1:06-CV-2650-TWT, 2009 WL 900800, at *1 (N.D. Ga. Mar. 31, 2009).  In *Mancha*, plaintiffs — United States citizens caught up in an immigration enforcement action — sued ICE and numerous individual agents for intentional torts and constitutional violations committed while conducting a series of immigration raids at a poultry plant in Georgia.  *Id.*  The United States argued for dismissal of the *Bivens* claims because "for many allegations, the Plaintiffs fail[ed] to specifically identify which agent was responsible."  *Id.* at *5.  The court denied the motion to dismiss because for "most of the

---

[6] Defendants made similar arguments in their motion to sever, which have already been rejected by this Court in its denial of that motion.  *See* Mem. in Supp. of Defs.' Mot. to Sever at 6 ("The newly added Plaintiffs' claims arise out of an alleged occurrence on February 8 in Arlington, over one week before, in a different city, involving different Plaintiffs, and with a different number (and thus composition) of Defendants than the occurrence that gave rise to the original Plaintiffs' complaint, which arose out of an incident that occurred in Annandale on February 17.").

allegations, 'the complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.'" *Id.* at *6 (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)). For example, the court noted that requiring "Plaintiffs [to] specifically indicate how each Defendant is responsible for each allegation at this point in the litigation is not necessary" because "'[m]ore specificity can be developed as the case proceeds.'" *Id.* (quoting *Kyle K.*, 208 F.3d at 944). Plaintiffs have alleged that each Defendant personally participated in both incidents; further specificity is not required at this stage of the case.

The cases Defendants rely on do nothing to bolster their argument. For example, Defendants cite *Robbins v. Oklahoma* for the proposition that plaintiffs bringing constitutional claims against government actors must plead the actions of each individual defendant with specificity. 519 F.3d 1242, 1250 (10th Cir. 2008). The court in *Robbins*, however, was emphasizing the need to distinguish between individual claims and claims against government agencies: "[t]herefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id. Robbins*' concerns are inapplicable here, because Plaintiffs are bringing claims only against individual defendants. In *Raub v. Bowen*, the Court dismissed a false imprisonment claim brought against "one or more Defendants" because no defendant "[could] be expected to know whether that claim includes him or her." 960 F. Supp. 2d 602, 616 (E.D. Va. 2013). Here, Plaintiffs include all Defendants in all claims brought in the amended complaint, so each Defendant is on notice that he is included in each claim. Other cases to which Defendants cite are similarly distinguishable. *See, e.g.*, *Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir. 2008) (relying on *Robbins* to dismiss claims against police chief where generic claims

made it impossible to distinguish between allegations directed at the chief and allegations directed at the city); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 627 (W.D. Va. 2015) (dismissing claims stemming from alleged hazing event against one defendant where plaintiff failed to allege defendant was even present on the night in question).

### B. Defendants violated Plaintiffs' clearly established Fourth Amendment rights.

Defendants stopped and seized Plaintiffs and invaded their homes because Plaintiffs appeared to be of Latino race or ethnicity.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  It is designed to "prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976).  These protections apply equally with respect to aliens present in the United States and citizens.  *See supra* Section II.B.1 at 18–19.  Defendant ICE agents violated Plaintiffs' clearly established Fourth Amendment rights when they arbitrarily seized them and invaded their homes based on their perceived race or ethnicity.

    1.   <u>Defendants unreasonably seized Plaintiffs in violation of the Fourth Amendment when they detained Plaintiffs without reasonable, articulable suspicion of unlawful activity.</u>

Defendant ICE agents seized Plaintiffs with no reasonable, articulable suspicion of wrongdoing and no plausible explanation except Plaintiffs' race, ethnicity, or perceived national origin.  Law enforcement officials "may initiate a brief investigatory stop if the officer has reasonable suspicion to believe that 'criminal activity may be afoot.'"  *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  To initiate an investigatory stop, law enforcement officials need "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *United States v. Cortez*, 449 U.S.

411, 417–18 (1981).  "[T]his demand for specificity in the information upon which police action is predicated *is the central teaching of [the Supreme] Court's Fourth Amendment jurisprudence.*"  *Id.* at 418 (quoting *Terry*, 392 U.S. at 21 n.18).  Defendants' warrantless seizures of Plaintiffs was unreasonable and lacked any articulable suspicion.

Defendants claim, without any proof, that the rationale for their investigatory stop was a search for the Houx-Hernández brothers and Santo Del Cid.  *See* Defs.' Mem. at 30.  Defendants could potentially establish reasonable suspicion if they could demonstrate that any of the Plaintiffs "closely resembled" the images of the Houx-Hernández brothers or Mr. Del Cid.  *See United States v. Williams*, No. 2:09cr149, 2010 WL 452200, at *5 n.2 (E.D. Va. Feb. 8, 2010).  In *Williams*, the court found that an officer had "sufficient basis to stop the defendant's vehicle" where the officer used a photograph to "visually verif[y] that the suspect singled out by the tipster was in fact [the defendant]."  *Id.* at *4–5.  The court found reasonable suspicion based on a totality of the circumstances, including a corroborated anonymous tip with matching location, clothing, and vehicle descriptions, in addition to the photograph identification.  *Id.*

Here, however, the allegations in the complaint show that Defendants lack the totality of circumstances evident in *Williams* because the photographs of the Houx-Hernández brothers and Mr. Del Cid were mere pretext.  Defendants' actions reveal a pattern of intentional misconduct: they approached both residences merely on the purported basis of a photograph and general location, with no further corroboration or reasonable suspicion of Plaintiffs.  No Plaintiff looks anything like the men in the photographs, which shows that the photographs were a mere pretext for the unconstitutional stops.  Am. Compl. ¶¶ 54, 64.  Furthermore, Defendants only showed the photograph of Mr. Del Cid to some of the Arlington Plaintiffs, and even then only briefly, further evidence that the photograph was a mere pretext for the unlawful search.  *Id.* ¶¶ 21, 26, 35, 74.

29

If the general location of Arlington or Fairmont Gardens was enough to establish a lawful basis

for a seizure, ICE agents could have detained every adult male in the neighborhood, or at least

every adult male of apparent Latino race and ethnicity, which would be clearly unconstitutional.

Accordingly, Defendants lacked reasonable suspicion to seize Plaintiffs.

> 2.  Even if Defendants had a reasonable, articulable suspicion that Plaintiffs committed unlawful activity, the intensive and prolonged nature of their detention violated the Fourth Amendment.

Even if Defendants had a reasonable, articulable suspicion of unlawful conduct by

Plaintiffs such that the *Terry* stop was constitutional (they did not), the seizure was not

sufficiently limited to the scope and duration that would have been adequate to confirm or dispel

any reasonable suspicions.  Investigative stops must be "sufficiently limited in scope and

duration to satisfy the conditions of an investigative seizure."  *Florida v. Royer*, 460 U.S. 491,

500 (1983) (plurality opinion).  The scope of law enforcement's investigative methods "should

be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a

short period of time."  *Id.*  With regards to duration, a stop may become "unlawful if it is

prolonged beyond the time reasonably required to complete [the officer's] mission."  *Illinois v.

Caballes*, 543 U.S. 405, 407 (2005).  An officer "must possess a justification" for prolonging a

stop beyond a routine stop "other than the initial [justification] that prompted the stop in the first

place."  *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008).  Such an expansion of scope

requires "either [] consent or a 'reasonable suspicion' that illegal activity is afoot."  *Id.*

Even if, *arguendo*, the photographs justified the initial stop, the scope of Defendants'

investigatory stop should have been limited to a quick look at Plaintiffs as they were leaving

their residences to discern that they were not the Houx-Hernández brothers or Mr. Del Cid.[7]

Detaining and questioning Plaintiffs was wholly unnecessary for this purpose. *See United States*

*v. De La Cruz*, 703 F.3d 1193, 1196–97 (10th Cir. 2013) (citing *Royer*, 460 U.S. at 500).  In *De*

*La Cruz*, the court held that there was no reasonable suspicion to seize the defendant when the

person who was the target of the ICE investigation differed in age and physical features from the

plaintiff.  *Id.*  With respect to the Annandale Plaintiffs, similarly, the Houx-Hernández brothers

are in their mid-20s, while the relevant Plaintiffs and their companions are in their late-30s to

40s.  Am. Compl. ¶ 64.  In addition, none of the Arlington Plaintiffs resembled Mr. Del Cid.  *Id.*

¶ 54.  To be sure, Plaintiffs, the Houx-Hernández brothers, and Mr. Del Cid are all Latino adult

males, but the Fourth Amendment prohibits law enforcement from acting solely based on race or

ethnicity.  *Brignoni-Ponce*, 422 U.S. at 886.

      Defendants mistakenly  rely on *Brignoni-Ponce* to justify expanding the scope of an

investigatory stop.  *See* Defs.' Mem. at 31.  The "absence of practical alternatives for policing

the [Mexican] border" weighed heavily on the Court's reasoning in *Brignoni-Ponce*, and the

Court limited its holding to [Mexican] border areas.  422 U.S. at 881.  The Court noted also that,

even within those areas, the Fourth Amendment "forbids stopping or detaining persons for

questioning about their citizenship on less than a reasonable suspicion that they may be aliens."

*Id*. at 881, 884.  Here, Defendants lacked reasonable suspicion to prolong the seizures beyond the

brief time necessary to compare Plaintiffs to photographs of the individuals for whom

---

[7] Defendants allege that they could not properly see the Plaintiffs at Fairmont Gardens because the stop occurred "roughly thirty minutes before sunrise."  Defs.' Mem. at 30.  In fact, dawn began breaking approximately one hour before the seizure, and Plaintiffs were accosted by Defendants a mere five minutes before the start of civil twilight, the brightest of the three stages of twilight.  Am. Compl. at n.2.

Defendants purportedly were looking.  Defendants therefore violated Plaintiffs' Fourth

Amendment rights.

      3.  <u>Defendants' warrantless search of Plaintiffs' residences without consent</u>
           <u>constituted an additional violation of the Fourth Amendment.</u>

     In entering and searching Plaintiffs' residences, Defendants violated "a 'basic principle of

Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are

presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).  Although consent

is an exception to the warrant requirement, consent is determined from the totality of the

circumstances, must be voluntarily given, and may not be the result of "duress or coercion."

*Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973).  A totality of the circumstances

examination includes "characteristics of the accused (such as age, maturity, education,

intelligence, and experience) and the conditions under which the consent to search was given

(such as the officer's conduct, the number of officers present, and the duration of the

encounter)." *United States v. Boone*, 245 F.3d 352, 361–62 (4th Cir. 2001).  "Whether the

individual searched was informed of his right to decline the search is a 'highly relevant' factor."

*United States v. Robertson*, 736 F.3d 677, 680 (4th Cir. 2013) (quoting *United States v. Wilson*,

895 F.2d 168, 172 (4th Cir. 1990)).

     Defendants failed to gain Plaintiffs' consent when they demanded entry into their

residences and executed warrantless searches.  At both residences, numerous armed Defendant

ICE agents identifying themselves as "police" commanded Plaintiffs to allow access to their

residences and failed to inform Plaintiffs of their right to decline consent.  Am. Compl. ¶¶ 22–23,

62.  Mr. Germán Velasquez Perdomo protested the early hour of the raid but felt compelled to

obey as Defendants followed him closely to his door and ordered it open.  *Id.* ¶¶ 22–23.

Defendants marched Mr. Pajarito Saput to his door and instructed he open it, and he likewise felt

compelled to obey. *Id.* ¶ 62. Defendants primarily spoke to Mr. Pajarito Saput in English, despite his limited facility with the language. *Id.* ¶ 58. In the Arlington incident, Defendants expanded their illegal search as they barged through each floor of Mr. Cárcamo's residence. *Id.* ¶¶ 25–43. The totality of the circumstances clearly demonstrate that Plaintiffs did not in any way consent to Defendants' warrantless entry and subsequent search of their residence.

> 4. <u>Defendants' unreasonable search and seizure of Plaintiffs violated their clearly established Fourth Amendment rights.</u>

A right is clearly established where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 170 (4th Cir. 2016) (quoting *Saucier*, 533 U.S. at 202) (internal quotation mark omitted). "[T]he exact conduct at issue need not to have been held to be unlawful in order for the law governing an officer's actions to be clearly established"; however, the existing authority must make the unlawfulness apparent. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). "The law is clearly established such that an officer's conduct transgresses a bright line when the law has 'been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.'" *Id.* (quoting *Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir. 1980)).

A reasonable ICE agent would have known that case law clearly established the unconstitutionality of seizing Plaintiffs and searching their residences in the absence of a reasonable, articulable basis for a belief that Plaintiffs were engaged in criminal activity. The Supreme Court has long held that "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Cortez*, 449 U.S. at 417. Seizing and detaining Plaintiffs absent reasonable suspicion of wrongdoing violates clearly established law. Furthermore, the Constitution's prohibition against warrantless

searches of the home is a cornerstone of Fourth Amendment jurisprudence.  *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) ("No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional.").  A reasonable ICE agent would have known that a warrantless search without consent or exigent circumstances violated clearly established Fourth Amendment rights.

Similarly, a reasonable ICE agent would have known that case law clearly established the unconstitutionality of a seizure and search based on Plaintiffs' Latino ethnicity alone. Defendants had over 40 years' notice that the Constitution does not permit race-based investigatory stops.  The Supreme Court declared in 1975, "[e]ven if [the authorities] saw enough to think that the occupants were of Mexican descent, this factor alone would justify neither a reasonable belief that they were [noncitizens], nor a reasonable belief that the car concealed other [noncitizens] who were illegally in the country."  *Brignoni-Ponce*, 422 U.S. at 886.  Notice of Plaintiffs' clearly established right to be free of Fourth Amendment violations based solely on race has been reiterated on numerous occasions.  *See United States v. Sundiata*, 3 F. Supp. 2d 682, 686 (E.D. Va 1998) ("[R]ace is not a proper basis for an investigatory stop . . . ."); *see also Sanchez v. Sessions*, 870 F.3d 901, 911 (9th Cir. 2017) (finding a seizure in violation of the Fourth Amendment when "officers did not have any information other than [the petitioner's] Latino ethnicity when they initially seized him on suspicion of being an 'undocumented worker[] alien[]'" (alterations in original)).  Plaintiffs' right to be free from unreasonable searches and seizures is clearly established by the Fourth Amendment, and Defendants violated this clearly established right.

### C.  Defendants denied Plaintiffs equal protection under the law in violation of the Fifth Amendment by targeting them solely based on their race, ethnicity, or perceived national origin.

Defendants characterize Plaintiffs' Fifth Amendment claim as one of selective prosecution.  They are wrong.  Plaintiffs' rights to equal protection under the law were violated well before their arrest, when Defendants targeted, questioned, and seized them based solely on their race, ethnicity, or perceived national origin.  The equal protection component of the Due Process Clause of the Fifth Amendment prohibits "denying to any person the equal protection of the laws." *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954)).  In alleging their equal protection claim, Plaintiffs must "at a minimum be able to show that [they] were treated differently because of [their] race." *Pena v. Porter*, 316 F. App'x 303, 316 (4th Cir. 2009) (citing *Farm Labor Org. v. Ohio State Highway Patrol*, 308 F.3d 523, 536 (6th Cir. 2002)).

Defendants argue that Plaintiffs were targeted because, as apparent adult Latino males, they fit the description of the "suspected criminal aliens" for whom Defendants purportedly were searching.  Defs.' Mem. at 36.  While the Supreme Court has acknowledged that "apparent Mexican ancestry" can be a relevant factor in the determination of reasonable suspicion in border areas, *see Brignoni-Ponce*, 422 U.S. at 885, an individual's apparent race, ethnicity, or national origin is not sufficient on its own to establish reasonable suspicion.  *See id.* at 885–86; *Diaz-Bernal*, 758 F. Supp. 2d at 135 ("*Brignoni-Ponce* actually stands for the proposition contrary to the defendants' assertion:  if the defendants searched, detained, and arrested the plaintiffs solely on the basis of race or national origin, they have violated clearly established constitutional rights.").

Defendants' assertion that their actions were justified by the alleged searches for Mr. Del Cid and the Houx-Hernández brothers could perhaps justify an initial, brief investigatory stop if

35

any of the Plaintiffs closely resembled the suspects. *See supra* Section III.B.2 at 30–31. They did not. Plaintiffs shared nothing more than perceived race, ethnicity, or national origin with the figures in the ICE agents' photographs. *Id.* at 31. Defendants did not even show the photographs to all of the Arlington Plaintiffs, proof that the photographs and the alleged search for the suspects were a mere pretext to stop, question, and seize Plaintiffs. Am. Compl. ¶ 74. As alleged, Defendants' sole motivation for targeting Plaintiffs was their apparent race, ethnicity, or national origin, falling short of the reasonable suspicion needed to justify their actions. *See United States v. Moreno-Chaparro*, 180 F.3d 629, 631 (5th Cir. 1999); *Diaz-Bernal*, 758 F. Supp. 2d at 135. Indeed, one Defendant even went so far as to ask Mr. Cárcamo if there were "other Spanish families" living in the neighborhood, compelling evidence that Defendants' actions in Arlington and Fairmont Gardens were driven by Plaintiffs' perceived Latino identity. Am. Compl. ¶ 46.

It is clearly established that law enforcement officials cannot target individuals for investigation solely on the basis of race or ethnic origin. *See, e.g.*, *Diaz-Bernal*, 758 F. Supp. 2d at 135 ("[I]f the defendants searched, detained, and arrested the plaintiffs solely on the basis of race or national origin, they have violated clearly established constitutional rights."). Plaintiffs' amended complaint sufficiently alleges that Defendants targeted Plaintiffs solely because of their apparent race, ethnicity, or national origin, a clear violation of their Fifth Amendment rights.

## CONCLUSION

Defendants' attempt to prevent Plaintiffs from asserting claims to redress violations of their constitutional rights is unpersuasive and contrary to precedent. Shutting the courtroom door to claims such as those asserted by Plaintiffs would allow ICE agents to operate wholly outside constitutional bounds. Accordingly, this Court should deny Defendants' motion to dismiss.

Dated:  January 16, 2018                    Respectfully submitted,


**COVINGTON & BURLING LLP**
By: _____//s//_____
Daniel E. Johnson (VSB No. 88696)
Mark H. Lynch (*pro hac vice*)
José E. Arvelo (*pro hac vice*)
Brandon H. Johnson (*pro hac vice*)
Daniel T. Grant (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
(202) 662-5224
dejohnson@cov.com

**LEGAL AID JUSTICE CENTER**
By: _____//s//_____
Simon Y. Sandoval-Moshenberg (VSB No. 77110)
Nicholas Marritz (VSB No. 89795)
Hallie Ryan (VSB No. 85927)
6066 Leesburg Pike, Suite 520
Falls Church, VA  22041
(703) 720-5605
simon@justice4all.org
nicholas@justice4all.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 16, 2018, the foregoing document was served on

Defendants via the CM/ECF System to:

> Dennis C. Barghaan, Jr.
> Deputy Chief, Civil Division, Assistant U.S. Attorney
> Paul E. Werner
> Chad A. Readler
> Dana J. Boente
> C. Salvatore D'Alessio, Jr.
> Mary Hampton Mason
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> E-mail: dennis.barghaan@usdoj.gov

**COVINGTON & BURLING LLP**

By: _____//s//_____
Daniel E. Johnson (VSB No. 88696)

One CityCenter
850 Tenth Street, NW
Washington, DC  20001
(202) 662-5224
dejohnson@cov.com

38