IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MYNOR ABDIEL TUN-COS, *et al.*          )
                                        )
    Plaintiffs,                         )
                                        )
        *v.*                         )          Civil Action No. 1:17-cv-943
                                        )
B. PERROTTE, *et al.*,                  )
                                        )
    Defendants.                         )
                                        )

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

DANA J. BOENTE
United States Attorney
Eastern District of Virginia

C. SALVATORE D'ALESSIO, Jr.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

DENNIS C. BARGHAAN, Jr.
Deputy Civil Chief
2100 Jamieson Avenue
Alexandria, Virginia 22314

PAUL E. WERNER
Trial Attorney
Civil Division, Torts Branch
P.O. Box 7146 Ben Franklin Station
Washington, D.C. 20044

## INTRODUCTION

In their opening memorandum, Defendants demonstrated that the Immigration and

Naturalization Act (INA) removes this Court's jurisdiction over the claims of the eight Plaintiffs

in removal proceedings, that multiple special factors recognized by the Supreme Court and

circuit courts counsel hesitation in the new context in which all Plaintiffs bring their claims, and

that in any event, Defendants are entitled to qualified immunity because Plaintiffs fail to allege

they personally participated in a clearly established violation of Plaintiffs' Fourth or Fifth

Amendment rights. Plaintiffs' response, which relies largely on district court cases from other

circuits, ignores recent circuit court and Supreme Court precedent, and fails adequately to

address Defendants' showing. In short, this Court should dismiss Plaintiffs' complaint.

## I.     The INA Removes this Court's Jurisdiction Over Plaintiffs' Claims.

### a.     Section 1252(b)(9) applies even before an order of removal has been entered.

As Defendants explained, § 242(b)(9) of the INA, 8 U.S.C. § 1252(b)(9), removes this

Court's jurisdiction over the claims of the eight Plaintiffs currently in removal proceedings and

channels those claims through the immigration courts and the courts of appeals. *See* Dkt. #39 at

6-10. Plaintiffs' argument that § 1252(b)(9) applies only to orders of removal, Dkt. #44 at 5-7, is

simply incorrect. The First Circuit made this clear in *Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007), a

point Plaintiffs recognize. Dkt. #44 at 6. Moreover, Plaintiffs' reliance for their contention on

*Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007), Dkt. #44 at 5, Ninth Circuit precedent from a

decade ago, is misplaced and ignores more recent, and hence more persuasive, precedent.

Namely, in *J.E. F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), the Ninth Circuit applied

§ 1252(b)(9) to bar right-to-counsel claims brought by aliens, some of whom did not have an

order of removal. *Id.* at 1029 (explaining that the plaintiffs were "at various stages of the removal process" and "some are waiting to have their first removal hearing").

And although, as Defendants noted in their motion, Dkt. #39 at 8 n.4, the Third and Eleventh Circuits have interpreted § 1252(b)(9) narrowly as applying only to orders of removal, those decisions relied on language in *INS v. St. Cyr*, 533 U.S. 289 (2001), in which the Supreme Court discussed the continued availability of habeas relief to challenge certain specific orders of removal that were not subject to judicial review before the courts of appeals under the INA at that time. *See id.* at 313-14 (discussing availability of habeas for order of removal against alien for committing criminal offense); *see also Chehazeh v. Att'y Gen.*, 666 F.3d 118, 131-33 (3d Cir. 2012) (discussing *St. Cyr*); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) (citing *St. Cyr*). But, in contrast to the plaintiff in *St. Cyr*, the "questions of law and fact," § 1252(b)(9), raised by the eight Plaintiffs' lawsuit here *would* be subject to judicial review before the courts of appeals under the INA should all those Plaintiffs choose to raise them in their removal proceedings, as the two original Plaintiffs already have. Therefore, the rationale of *St. Cyr*, which did not directly address the circumstances of this case, does not apply here.

More importantly, *St. Cyr* addressed § 1252(b)(9)'s applicability to a request for habeas relief. Habeas corpus is a remedy both enshrined in the Constitution through the Suspension Clause, *see* U.S. Const. art. I, § 9, and sanctioned by Congress through statute. *See, e.g.*, 28 U.S.C. §§ 2241, 2255; *see also St. Cyr*, 533 U.S. at 305 (noting that without habeas jurisdiction, there would be "a serious Suspension Clause issue"). That remedy itself is incorporated into the Constitution, in sharp contrast to the implied damages remedy that Plaintiffs seek, a remedy the Supreme Court recently emphasized is quite limited in application. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

In any event, Congress took issue with *St. Cyr*'s expansion of habeas review for criminal aliens by explicitly channeling that review through the courts of appeals via later amendments to the INA. *See* H.R. Rep. No. 109-72 at 173-75 (critiquing and responding to the holding in *St. Cyr*). Thus, it is clear from Congress's actions that it wants the INA to limit the "piecemeal nature of the review process," *Aguilar*, 510 F.3d at 9, and channel review of "questions of law and fact" related to removal proceedings through the courts of appeals. The First and Ninth Circuit's understanding of § 1252(b)(9) follows Congress's intent. In sum, § 1252(b)(9) applies to Plaintiffs' claims, even though they are not yet the subject of an order of removal.

**b. Plaintiffs' claims are not wholly independent of or collateral to their removal proceedings.**

Plaintiffs' second attempt to avoid the clear application of the "zipper clause" of § 1252(b)(9) is similarly inapposite. Claims for purported Fourth Amendment and equal protection clause violations—like Plaintiffs' claims here—frequently arise in removal proceedings. Therefore, as both the First and Ninth Circuits made clear, those claims are not wholly independent of or collateral to Plaintiffs' removal proceedings. *See J.E. F.M.*, 837 F.3d at 1033; *Aguilar*, 510 F.3d at 13. That Plaintiffs' purported *Bivens* claims would exist even had the Government opted not to initiate removal proceedings against them, *see* Dkt. #44 at 7, (a point Defendants vigorously contest, *see infra* Part II), is irrelevant and is not the standard for determining whether claims are independent or collateral.

Without much to distinguish their case from First and Ninth Circuit precedent on this point, Plaintiffs rely primarily on *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106 (D. Conn. 2010), a district court case from another circuit. But the logic of *Diaz-Bernal*'s holding—that because an immigration judge could not provide the *remedy* the plaintiffs sought, the legal claims for that

remedy, and the predicate questions of law and fact necessary to adjudicate those claims, did not "aris[e] from" their removal proceedings under the terms of § 1252(b)(9)—is fundamentally flawed and contravenes the plain language of the statute. Section 1252(b)(9) clearly states that judicial review of "all questions of law and fact" that "aris[e] from any action taken or proceeding brought" to remove an alien shall be available only through a petition of review before the courts of appeals. It makes no mention of damages. Nor does the INA.

Thus, the absence of the availability of a damages remedy in removal proceedings is irrelevant to the question of whether § 1252(b)(9) applies to certain claims raised by aliens facing removal proceedings.[1] Under the plain language of the statute, if those claims involve "questions of law and fact" that "aris[e] from any action taken or proceeding brought" to remove an alien, then they fall within the ambit of § 1252(b)(9) and district courts lack jurisdiction to consider those claims. Those "questions of law and fact" must instead be raised before the appropriate court of appeals through a petition for review. Indeed, the Ninth Circuit applied to *Bivens* claims a separate jurisdiction-stripping provision of § 1252 containing similar "arising from" language, despite the inability of an immigration judge to provide the remedy the plaintiffs there sought. *See Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) (finding that plaintiffs' false arrest claim "arose from" a decision to commence removal proceedings, and therefore was barred by § 1252(g)); 8 U.S.C. § 1252(g) (removing jurisdiction to hear "any cause or claim" by an alien "arising from" a decision to "commence proceedings, adjudicate cases, or execute removal order"); *see also Guardado v. United States*, 744 F. Supp. 2d 482, 490 (E.D. Va. 2010)

---

[1] As explained in Defendants' motion and below, *infra* Part II.b.ii, however, the absence of any mention of damages remedies in the INA is *highly relevant* to the question of whether this Court should imply such a remedy in this context.

(Cacheris, J.) (applying § 1252(g) to *Bivens* claims even though plaintiff would lack "the opportunity for *money* damages").[2]

Here, Plaintiffs' claims clearly involve "questions of law and fact" that arise from "action taken" to remove them—namely, the searches, questioning, and detention undertaken by ICE agents in the course of initiating removal proceedings against them. *Cf. Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482-83 (1999) ("*AADC*") (noting that the "deportation process" includes events that occur before the formal institution of removal proceedings). That two of the Plaintiffs have already raised these "questions of law and fact" before the immigration court reinforces this point. And although the precise legal standard applied in the immigration court may differ from the standard that would apply in district court litigation under *Bivens*, that difference is immaterial. Both sets of claims involve "questions of law and fact" that arise from actions taken against the Plaintiffs. Under a plain reading of the statute, those claims are channeled to the immigration courts and the courts of appeals.

Lastly, Plaintiffs' attempt to remove their claims from the ambit of § 1252(b)(9) by arguing that their claims relate to actions taken before removal proceedings were formally initiated contravenes the language of that statute. Under Plaintiffs' strained reading, in the phrase "action taken or proceeding brought" contained in § 1252(b)(9), the words "action taken" are meaningless. The First Circuit made this point succinctly in *Aguilar*: reading the statute to apply only to claims that arise from ongoing removal proceedings "would render the word 'action' superfluous and effectively excise it from the statute." 510 F.3d at 10.

---

[2] The other cases Plaintiffs cite are readily distinguishable. *Mochama v. Zwetow*, No. 14-2121, 2017 WL 36363 (D. Kan. Jan. 3, 2017), an unpublished district court case from another circuit, relied on *St. Cyr* and is flawed for the reasons mentioned above. And *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1-34 (C.D. Cal. 2010), involved a habeas petition, not a *Bivens* claim.

In sum, Congress specifically intended to prevent parallel proceedings before both district courts and immigration courts regarding similar questions of law and fact by channeling the resolution of all questions of law and fact arising from actions taken regarding those proceedings through the immigration courts to the circuit courts of appeals. Such parallel proceedings are precisely what the two original Plaintiffs are currently engaged in, and what the other six Plaintiffs in removal proceedings could engage in should they choose to do so and should this Court allow their *Bivens* claims to proceed. It should not. Section 1252(b)(9) applies to their claims. Accordingly, this Court lacks subject matter jurisdiction and should dismiss their claims.

## II.     Multiple Special Factors Apply in this New Context.

Similarly, Plaintiffs fail adequately to counter Defendants' showing that Plaintiffs ask this Court to extend *Bivens* into a new context that raises numerous special factors recognized by the Supreme Court, the Fourth Circuit, and other circuits.

### a.  Plaintiffs' claims arise in a new context.

As explained in Defendants' motion, the recent Supreme Court guidance in *Abbasi* controls the determination of whether a case arises in a new context, and compels the conclusion that it does here. Specifically, Defendants explained that they were operating under a different statutory or legal mandate than the defendants in *Bivens* and its progeny, that Plaintiffs' claims risked disruptive intrusion by the Judiciary into the functioning of the Executive and Legislative Branches, and that other special factors were present in this case which were not present in the three earlier cases in which the Supreme Court implied a remedy. The *Abbasi* Court identified all three of those factors as relevant to the "new context" inquiry. *See* 137 S. Ct. at 1860. Plaintiffs' implicit suggestion, Dkt. # 44 at 11, that the absence of some factors means the context is not

new runs squarely contrary to *Abbasi*'s own instruction that "the new-context inquiry is easily satisfied." 137 S. Ct. at 1865.

Faced with the multiple "meaningful differences"—under *Abbasi*'s clear construction—that distinguish the context of this case from that in *Bivens*, *Davis*, and *Carlson*, Plaintiffs offer a thirty-thousand foot view of the context here as "run-of-the mill unreasonable search-and-seizure claims," Dkt. #44 at 14, and repeatedly cite or quote *Abbasi*'s global observation that "this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." 137 S. Ct. at 1856. *See* Dkt. #44 at 1, 14, 23. Such generic dicta cannot save Plaintiffs' claims.[3]

As the Court itself explained, the "continued force" of *Bivens* applies in the "*context in which it arose*," 137 S. Ct. at 1856 (emphasis added), a qualification that Plaintiffs appear to ignore. As detailed by Defendants in their opening motion and as summarized above, Plaintiffs' claims clearly do not arise in the same context as the search-and-seizure claims in *Bivens*. The Defendants operated under a different statutory mandate—the INA, a scheme extensively overseen, reviewed, and amended by Congress. Plaintiffs' claims risk disruptive intrusion of the Judiciary into the functioning of the Executive and Legislative Branches by disrupting the removal process and by stymieing alleged immigration enforcement policy. And their claims raise other special factors not considered before, including the ability effectively to obtain two rounds of discovery on Defendants, who are operating in a sphere in which the types of claims

---

[3] Moreover, that statement came shortly after the Court opined that "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." 137 S. Ct. at 1856. Thus, the Court's subsequent clarification regarding search-and-seizure cases clearly is not a blanket statement that all claims concerning *any* search-and-seizure allegations are actionable under *Bivens* regardless of context.

Plaintiffs raise are easy to allege and difficult to disprove and which could lead to a tide of lawsuits, particularly given the volume of encounters with aliens that ICE agents experience as a part of their normal course of duties. *See Rajah v. Mukasey*, 544 F.3d 427, 447 (2d Cir. 2008) (noting that ICE officers "may arrest several aliens per day").

Plaintiffs' efforts to argue otherwise are unconvincing. Their assertion that because both *Bivens* and this case involved searches and seizures by line-level law enforcement officers, they therefore involve the same context, Dkt. #44 at 11-12, defines "context" at far too high a level of generality and paints far too broad a picture of "context." Indeed, Plaintiffs effectively read *Abbasi* as stating that "search-and-seizure" *is* the context in which *Bivens* arose, an argument that simply cannot withstand scrutiny.

That reasoning runs counter to the last thirty-five years of *Bivens* jurisprudence limiting its applicability and highlighted by the Court in *Abbasi*. As Plaintiffs correctly note, both the narcotics agents in *Bivens* and the Defendants here have authority to conduct searches, seizures, and arrests. Dkt. #44 at 12. But so do all federal law enforcement officers. *Cf.* 28 U.S.C. § 2680(h) (defining "investigative or law enforcement officer" as an officer "empowered by law to execute searches, to seize evidence, or to makes arrests."). That would include military police officers, Social Security agents, and the plethora of other law enforcement agents across the Government and its agencies who operate in often wildly varying contexts. Yet it is beyond dispute that the mere fact that such line-level officers conducted a search and seizure does not in and of itself make the context of any claims arising from those events the same as that in *Bivens*. *See, e.g.*, *Attkisson v. Holder*, No. 1:17-cv-364, 2017 WL 5013230, at *6 (E.D. Va. Nov. 1, 2017) (Brinkema, J.) (noting the "discrete factual scenarios" in the Supreme Court's earlier *Bivens* decisions and that "plaintiffs' claims involve a significantly different factual setting"). To

understand *Abbasi* otherwise is to render meaningless the last three decades of Supreme Court precedent which noted various factors beyond the "mechanism of injury"—*i.e.*, an allegedly unreasonable search and seizure—as giving rise to new contexts. *Abbasi*, 137 S. Ct. at 1859.

To take one example, a military officer searched and seized by line-level military police officers does not have a remedy under *Bivens* under longstanding Supreme Court precedent. *See United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (barring claims against military officers); *Chappell v. Wallace*, 462 U.S. 296, 304-05 (1983) (barring equal protection claims against military officers). Indeed, the Court denied the equal protection claims of military officers in *Chappell*, despite the availability of that remedy to the plaintiff in *Davis*. As another example, although the plaintiff in *Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012), did not raise claims regarding his initial seizure, if he had, many of the concerns the Fourth Circuit detailed, including the national security context of the seizure and the presence of classified information, would have equally counseled hesitation before implying a remedy for him. In short, it is not the "name on Defendants' jackets," Dkt. #44 at 13, that makes this case a new context. It is the various factors that *Abbasi* and other Supreme Court precedent noted and that Defendants explained in their opening motion that do. *Accord Nassiri v. Tran*, No. 15-cv-583, 2018 WL 295974, at *4-5 (S.D. Cal. Jan. 3, 2018) (refusing to imply search-and seizure claims against Social Security agents for warrantless, nonconsensual home entries because officers acted "pursuant to a program that is extensively regulated by Congress").

Similarly, that Plaintiffs raise Fourth Amendment and Fifth Amendment equal protection claims like the plaintiffs in *Bivens* and *Davis* does not resolve the "new context inquiry." Indeed, *Abbasi* explicitly rejected the Second Circuit's approach, which looked at the right asserted and the "mechanism of injury." 137 S. Ct. at 1859. Moreover, pre-*Abbasi* Supreme Court precedent

makes clear that the fact that a *Bivens* remedy under one amendment may be recognized in a particular context does not control all other cases under that amendment. *Compare Carlson v. Green*, 446 U.S. 14, 19-20 (1980) (implying remedy under Eighth Amendment based on failure to provide medical care for prisoner in federal prison), *with Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012) (refusing to imply remedy under Eighth Amendment based on failure to provide medical care for prisoner in privately run prison).

Here, Defendants were acting pursuant to the INA, a scheme that is extensively regulated and reviewed by Congress. That alone makes this case meaningfully different from *Bivens*. *See Abbasi*, 137 S. Ct. at 1858, 1860. All the more so given the other factors that distinguish this case from *Bivens* and given that, as mentioned above, "the new context inquiry is easily satisfied." *Id.* at 1865. In sum, the context is new. Therefore, as Plaintiffs concede, Dkt. #44 at 15 n.3, this Court must conduct a special factors analysis.

### b. Special factions counsel hesitation in this new context.

In this new context, numerous special factors, including the INA as a comprehensive alternative scheme, Congress's constitutional authority over the immigration arena, the absence of remedies in the INA, a once-explicit and now-implicit challenge to purported immigration enforcement policy, and the potential system-wide costs of a remedy here, counsel hesitation.

### i. The INA is a comprehensive statutory scheme.

First and foremost, the INA is a comprehensive statutory scheme that precludes the claims of the eight Plaintiffs in removal proceedings. *De La Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015), *cert. denied*, 137 S. Ct. 2289 (2017), is directly on point. And given that Plaintiffs' constitutional claims can be raised under the INA before the immigration court—as the two original Plaintiffs have done—and before the court of appeals in a petition for review, *Alvarez v.*

*U.S. ICE*, 818 F.3d 1194 (11th Cir. 2016), and *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2012), are also on point and instructive. In terms of the reasoning of those latter two cases, the fact that the plaintiffs there were detained whereas the Plaintiffs here are not is immaterial. *See Alvarez*, 818 F.3d at 1207 (noting the review procedures available to aliens in detention); *Mirmehdi*, 689 F.3d at 982 (noting that plaintiffs had sought relief through the INA). Rather, because both categories of aliens have access to review mechanisms and relief through the INA, that scheme is a special factor precluding the eight Plaintiffs' claims. *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Additionally, the court in *Alvarez* applied special factors not only to the plaintiff's detention claims, but also to his unreasonable seizure claim. *See* 818 F.3d at 1199.

Recognizing *De La Paz*'s direct applicability to their claims, Plaintiffs resort—again—to a district court case from another circuit, namely (and again), *Diaz-Bernal. See* Dkt. #44 at 17. That court held that because the INA does not provide for a damages remedy, it is not an alternative remedial scheme. *See* 758 F. Supp. 2d at 128. But the Ninth Circuit in *Mirmehdi* explicitly rejected that reasoning. *See* 689 F.3d at 982 ("We are unpersuaded by the Mirmehdis' assertions they are nonetheless entitled to a *Bivens* remedy because neither the immigration system nor habeas provides monetary compensation for unlawful detention.").

In any event, the reasoning in *Diaz-Bernal* turns the special factors analysis—and the Supreme Court's and various circuits' clear construction of that analysis—on its head. The absence of a damages remedy in the INA is not a reason *to imply* a remedy. It is a reason *to not* imply a remedy. As the Ninth Circuit explained: "Congress's failure to include monetary relief can hardly be said to be inadvertent, given that despite multiple changes to the structure of

appellate review in the Immigration and Nationality Act, Congress never created such a remedy." *Id.* (citing *Schweiker v. Chilicky*, 487 U.S. at 423, 425 (1988)); *see also Swyers v. U.S. Patent & Trademark Office*, No. 1:16-cv-15, 2016 WL 7042943, at *12 (E.D. Va. May 27, 2016) (O'Grady, J.) (noting that plaintiff was "incorrect that the unavailability of money damages under the existing scheme warrants a *Bivens* remedy").

Defendants' recognition that Plaintiff Cárcamo is not in removal proceedings and therefore the INA does not provide him a remedial scheme in no way "undermines," Dkt. #44 at 18, their showing regarding the other eight Plaintiffs who are in removal proceedings. Put simply, the INA's remedial scheme is available to those Plaintiffs in removal proceedings. It is not for the one Plaintiff who is not. And Plaintiffs' assertion that "constitutionally speaking," *id.*, there is no difference between any of the Plaintiffs, and therefore the INA is irrelevant to all of them, is a non-sequitur. Such an assertion utterly misconstrues the special factors analysis and its emphasis on context. "Constitutionally speaking," all the plaintiffs raising *Bivens* claims before the Supreme Court over the last thirty-odd years had just as much entitlement to the protections of the Constitution as others in this nation. That did not stop the Court from rejecting their claims. Moreover, a *Bivens* remedy is judicially implied, not constitutionally mandated. *See Al-Zahrani v. Rodriguez*, 669 F.3d 315, 319 (D.C. Cir. 2012) ("[T]he only remedy they seek is money damages, and, as the government rightly argues, such remedies are not constitutionally required."). The mere existence of certain constitutional rights (in this case, ones that can be considered in removal proceedings when raised by Plaintiffs) in no way guarantees a remedy. Rather, context is what counts. And here, the context of claims reviewable through the INA counsels against implying a remedy.

### ii.     Other special factors counsel hesitation.

Beyond the INA, other special factors arise in this context. First, Plaintiffs' claims raise separation-of-powers concerns, which "should be central" to a special factors analysis. *Abbasi*, 137 S. Ct. at 1857. Plaintiffs' argument that their claims do not contain a "full frontal attack" against the United States' immigration enforcement policy, Dkt. #44 at 19, and instead are "aimed only" at line-level officers, *id.* at 20, misses the point. Plaintiffs are challenging the immigration enforcement actions of those officers in carrying out their agency's mission of locating and removing unlawful aliens based on the alleged manner in which those officers carried out that mission—namely, they arrested concededly unlawful aliens located at the site of their operation who were not the specific target of the operation. Given Congress's constitutionally explicit prerogative over immigration matters, and the Executive Branch's role in enforcing the immigration laws Congress enacts, Plaintiffs' claims raise separation-of-powers concerns, even without an explicitly "frontal attack" on policy. Certainly, the significant chill that would be placed on immigration officers if a *Bivens* remedy were recognized in this context has profound separation-of-powers implications. And immigration enforcement operations and priorities most certainly affect national security and foreign affairs. *See Mirmehdi*, 689 F.3d at 982.

Relatedly, although Plaintiffs are technically correct that their First Amended Complaint supersedes the original complaint and nullifies it, such an overly formalistic approach cannot erase the fact that in their original complaint, Plaintiffs made clear that the *intent* of their complaint was to challenge purported "Trump Administration" immigration enforcement policies, specifically, "collateral arrests." *See* Compl. ¶ 5, 15. That is a bell that cannot be unrung, especially when the gravamen of their allegations remains unchanged. And despite

Plaintiffs' current assertion that their lawsuit does not challenge any ICE policies, Dkt. #44 at 22, such assertions and the removal of certain allegations from their complaint do not obviate the fact that their claims challenge ICE officials for carrying out what Plaintiffs have already characterized as a policy. *See* Compl. ¶ 6.

By analogy, if the plaintiff in *Lebron* had removed all references to counterterrorism and detention policy from his complaint, and insisted he was simply suing those detaining him for the conditions of his confinement, the special factors analysis the Fourth Circuit outlined would still in large part apply to his claims. So too here. Plaintiffs cannot do through the back door what the Supreme Court in *Abbasi* said they cannot do through the front simply by asking this Court to ignore the obvious premise of their claims. They cannot challenge purported Executive Branch policy through a *Bivens* action. *See Abbasi*, 137 S. Ct. at 1860.

Additionally, Plaintiffs fail adequately to grapple with Defendants' showing that the absence of a damages remedy in the INA, despite Congress's frequent and intense attention to that statute and to immigration matters generally, strongly counsels hesitation here. Plaintiffs' assertion that earlier Supreme Court decisions determined "that the absence of an explicit statutory prohibition barring monetary relief should be regarded as a sign that such remedy remains available," Dkt. #44 at 21, as with many of Plaintiffs' other arguments on this subject, simply ignores the last three decades of Supreme Court jurisprudence. In *Schweiker*, the Court held that the relevant statutory remedial scheme was a special factor counselling hesitation, yet made no mention that the scheme statutorily prohibited monetary relief. *See* 487 U.S. at 424-25.[4]

---

[4] Because, as Plaintiffs point out, Plaintiff Cárcamo is a United States citizen, this portion of Defendants' special factors showing does not apply to him, contrary to Defendants' position in their opening motion.

Plaintiffs have also failed to rebut Defendants' showing that allowing the claims here to proceed raises multiple system-wide costs and administrability problems, including slowing down the streamlined process Congress has attempted to construct, opening the floodgates of litigation against line-level ICE officers and thereby chilling immigration enforcement, and effectively imposing an intolerable administrative burden on the immigration enforcement system. Plaintiffs' contention that Defendants "have presented no evidence" to support these potential problems, Dkt. #44 at 23, misses the mark. That is not the standard. It is the mere potential for these concerns to come to fruition were a remedy recognized that counsels against implying a remedy. Thus, the proper inquiry is whether a "factor must cause a court to *hesitate*" before determining that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858 (emphasis added). That bar is low. *See Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) ("The only relevant threshold—that a factor 'counsels hesitation'—is remarkably low.") (en banc).[5]

Here, the concerns raised by Defendants are more than enough to cause this Court to hesitate before making that determination. And Plaintiffs' assertion that the administrability challenges they highlight "are inherent in *any Bivens* action," Dkt. #44 at 23, misses the point.

---

[5] Plaintiffs' reliance on *Linlor v. Polson*, 263 F. Supp. 3d 613 (E.D. Va. 2017), is also of no moment. *Linlor* involved an excessive force claim, not an unreasonable search and seizure claim. *See id.* at 618. Moreover, *Linlor* recognized that the context was new, but simply held that special factors did not counsel hesitation. *See id.* at 625. Lastly, *Linlor*'s holding was based largely on the fact that no other court to consider the question had declined to imply a remedy in the context of claims against TSA officials. *Id.* at 624. That is no longer true. The Third Circuit has since explicitly held that special factors *do* counsel hesitation in that context. *See Vanderklok v. United States*, 868 F.3d 189, 205-09 (3d Cir. 2017) (dismissing on special factors grounds First Amendment claims against TSA officer based on presence of national security concerns and of statutory scheme that does not provide damages, among other factors).

*Bivens* did not involve a congressional scheme that the Legislature designed to include a streamlined process and that provided mechanisms for judicial review of questions of law and fact. Nor did *Bivens* involve federal officials who make multiple arrests each day in a manner such that compiling detailed contemporaneous notes to assist them in defending against this sort of litigation would be enormously burdensome. In short, Plaintiffs' claims ask this Court to extend *Bivens* into a new context. Multiple special factors counsel against implying a remedy in that new context. This Court should therefore dismiss Plaintiffs' complaint.

### III.     Defendants Are Entitled to Qualified Immunity.

Lastly, Defendants are entitled to qualified immunity, and Plaintiffs have failed to rebut that showing.

#### a.    Plaintiffs fail to plead facts showing a clearly established Fourth Amendment violation during the February 17, 2017 incident.

As laid out in their opening memorandum, Defendants had a reasonable, articulable suspicion to stop the vehicle the original Plaintiffs entered because, in the early morning hours in mid-February, they saw four adult males leave an apartment that had housed adult male suspects ICE sought. At the very least, based on Plaintiffs' own allegations, it certainly was not clearly established they did not have a reasonable, articulable suspicion. *Cf. District of Columbia v. Wesby*, No. 15-1485, 2018 WL 491521, at *11 (U.S. Jan. 22, 2018) ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" (citation omitted)). And once they stopped the vehicle on suspicion of containing unlawful aliens, they could ask the occupants for identification. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). Contrary to Plaintiffs' assertions, Dkt. #44 at 31, courts have applied *Brignoni-Ponce* to stops far from the Mexican border. *See*

*United States v. Hernandez-Moya*, 353 F. App'x 930, 933 (5th Cir. 2009) ("This court has held that roving border patrol stops, even those not in close proximity to the border, should be analyzed using the *Brignoni-Ponce* factors." (citations omitted)).

Even if *Brignoni-Ponce* does not apply in the circumstances of this case, that would not limit the Defendants' ability to ask the vehicle's occupants for identification. That is because "it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop." *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 186 (2004). As Plaintiffs' complaint explains, one of the vehicle's occupants could not produce identification, which would not resolve Defendants' reasonable suspicion, and Plaintiffs do not indicate (or plead) which form of identification the original Plaintiffs produced and how that identification would affect Defendants' reasonable suspicion or probable cause to ultimately arrest those Plaintiffs, who are concededly unlawfully present in the United States.

Plaintiffs' assertion that the search for the suspects on February 17 was actually a pretext, Dkt. #44 at 29, is noticeably absent from their amended complaint. *See generally* FAC. Plaintiffs cannot now amend their complaint through their opposition to a motion to dismiss. *See Bishop v. 7-Eleven, Inc.*, No. 4:11-cv-73, 2011 WL 13192917, at *1 (E.D. Va. Aug. 9, 2011) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotation and citation omitted)). Accordingly, the assertion of pretext for the February 17 incident must be disregarded. And *United States v. Williams*, No. 2:09-cr-149, 2010 WL 452200 (E.D. Va. Feb. 8, 2010), upon which Plaintiffs rely, is readily distinguishable. That case involved an anonymous tip describing someone on a basketball court, *id.* at *1, not an operation targeting specifically identified individuals who had lived at a specific address. Notably, Plaintiffs do not attempt to distinguish *Taft v. Vines*, 70 F.3d 304 (4th Cir. 1995), which held that

officers had reasonable suspicion to stop a car that left a mobile home park where a suspect lived. *See* Dkt. #39 at 31. Lastly, Plaintiffs' repeated references to the events of February 8, 2017, Dkt. #44 at 29-31, are irrelevant to the events of February 17. Defendants did not raise the noted arguments in regard to the February 8 allegations.

Under Plaintiffs' own amended complaint, Defendants had a reasonable suspicion to stop the original Plaintiffs' vehicle in the early morning hours and ask for their identification. The original Plaintiffs do not dispute their lack of lawful status to be present in the United States. Once that fact was established, be it at the vehicle or shortly thereafter at those Plaintiffs' apartment, any Fourth Amendment concerns disappeared. Plaintiffs have failed to allege a clearly established Fourth Amendment violation regarding the February 17 incident, and Defendants are entitled to qualified immunity on that claim.

### b. Vague allegations of "Defendants" are insufficient.

Plaintiffs also have failed to counter Defendants' showing that their vague allegations of "Defendants" who participated in the February 8, 2017 incident are insufficient under basic pleading standards and now well-settled Supreme Court precedent. Plaintiffs' assertion that they allege "*all* of these Defendants" participated in the February 8 incident is belied by their own amended complaint, which specifically states that "four Defendants" participated in that operation. FAC ¶ 20. And Plaintiffs' blanket allegation that the Defendants personally participated in the events of February 8 "and/or" those of February 17, *id.* ¶ 18, is insufficient in this personal liability suit against five federal officers and does not override the more specific allegation of how many Defendants actually participated in the February 8 incident. Nor have Plaintiffs adequately distinguished *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619 (W.D. Va. 2015), a tort claim against five individual defendants. *Id.* at 622. Contrary to Plaintiffs' assertion,

Dkt. #44 at 28, the plaintiff there *had* alleged that all five defendants were at the hazing event by stating that "defendants" had engaged in certain actions there. *Id.* at 624-25. But the court held that was not enough for the defendant not specifically named as engaging in any of the specific actions. *Id.* at 626-27. And *Mancha v. ICE*, No. 1:06-cv-2650, 2009 WL 900800 (N.D. Ga. Mar. 31, 2009), is an unpublished district court case from another circuit that involved a single alleged incident—not the two separate incidents alleged here—and that preceded the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which clarified pleading standards against federal officials in their individual capacities. *See Marcilis v. Township of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (affirming dismissal of claims against two named DEA agents because no specific allegations against them and noting *Iqbal*'s discussion of *Bivens* liability). Plaintiffs' blanket allegations against "four Defendants" regarding the February 8 incident are insufficient in this individual-capacity lawsuit.[6]

### c. Plaintiffs have failed to adequately plead an equal protection violation.

Lastly, Plaintiffs have not alleged that they were treated differently than similarly situated aliens, which is fatal to their equal protection claim. *See* Dkt. #39 at 34-35 (discussing *United States v. Armstrong*, 517 U.S. 456 (1996)). Their assertion that their claim is not one for selective prosecution is technically correct—they do not face criminal prosecution. But that only strengthens Defendants' showing. In the context of immigration enforcement, which here is civil, their allegations certainly must at least meet the same standard as that in the far weightier context

---

[6] Ironically, Plaintiffs, who argue that this Court is somehow precluded from considering their arguments in opposition to the Defendants' motion under Rules 20 and 21, Dkt. #44 at 22, assert that this Court "already . . . rejected" arguments Defendants made in that motion regarding the separate nature of the two incidents at issue. *Id.* at 26 n.6. Regardless, Plaintiffs fail to mention that this Court's denial of Defendants' motion to sever at this stage was without prejudice. *See* Dkt. #35.

of a criminal prosecution. *Cf. AADC*, 525 U.S. at 488 ("As a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation."). Additionally, Defendants never asserted that Plaintiffs were targeted because they were "apparent adult Latino males," Dkt. #44 at 35, but rather because they were adult males, similar to the individuals they sought. Dkt. #39 at 30, 31, 36. Regardless, Plaintiffs' fallback on their conclusory allegations that Defendants targeted them solely on the basis of their apparent race and ethnicity relies on assertions that must be ignored under *Iqbal*. And their allegation regarding "Spanish families" is insufficient given that it does not specify who made that comment, it applies only the February 8 incident, and it does not state a clearly established violation in the context of ICE agents' search for Santo Del Cid. In short, Plaintiffs present a theory that is implausible in light of the actual facts alleged in their complaint—namely, that the original Plaintiffs on February 17 left the apartment where the adult male suspects had resided, and that at least one adult male Latino, along with numerous females of unspecified ethnicity, were not arrested during the February 8 search for Santo Del Cid. This Court should dismiss Plaintiffs' conclusory and implausible equal protection claim.

## CONCLUSION

Congress has removed district court jurisdiction over the questions of law and fact presented by the eight Plaintiffs in removal proceedings. Moreover, the INA and other special factors counsel against extending *Bivens* into the new context of immigration enforcement operations. In any event, Defendants are entitled to qualified immunity. For these reasons and those in Defendants' motion to dismiss, this Court should dismiss Plaintiffs' complaint.

DATED this 22nd day of January, 2018.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

DANA J. BOENTE
United States Attorney
Eastern District of Virginia

C. SALVATORE D'ALESSIO, Jr.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

_____/s/_____

DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
E-Mail: dennis.barghaan@usdoj.gov

Paul E. Werner
Trial Attorney
Civil Division, Torts Branch
P.O. Box 7146 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4152
Fax: (202) 616-4134
E-Mail: paul.werner@usdoj.gov

Attorneys for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of this filing to:

Simon Y. Sandoval-Moshenberg
VA Bar No. 77110
Nicholas Marritz
VA Bar No. 89795
Legal Justice Aid Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Telephone: (703) 720-5605
E-Mail: simon@justice4all.org; nicholas@justice4all.org

Daniel E. Johnson
VA Bar No. 88696
Mark H. Lynch (*pro hac vice*)
Jose E. Arvelo (*pro hac vice*)
Brandon H. Johnson (*pro hac vice*)
Daniel T. Grant (*pro hac vice*)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5224
E-Mail: dejohnson@cov.com


/s/
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
E-Mail: dennis.barghaan@usdoj.gov