IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MYNOR ABDIEL TUN-COS *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-943 (AJT/TCB) |
| | ) | |
| B. PERROTTE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This matter is before the Court on Defendants' Motion to Dismiss the First Amended Complaint [Doc. No. 38] (the "Motion"). The Court held a hearing on the Motion on January 26, 2018, following which it took the matter under advisement. For the reasons stated herein, Defendants' Motion is DENIED as to all Plaintiffs.[1]

## I. BACKGROUND

This *Bivens*[2] action, filed on August 23, 2017, challenges the legality of stops and home invasions on two occasions. Defendants are agents of the Immigration and Customs Enforcement ("ICE") who are alleged to have conducted the illegal stops and searches while operating as an ICE "Fugitive Operations Team." Am. Compl. ¶ 2. More specifically, seven Plaintiffs[3] allege that on February 8, 2017 in Arlington, Virginia, Defendants engaged in an early morning "home

---

[1] Also pending before the Court is Plaintiffs' Motion for Leave to File Notice of Supplemental Authority Regarding Defendants' Motion to Dismiss, [Doc. No. 47] which the Court will grant.
[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[3] These Plaintiffs include Pedro Velasquez Perdomo, Luis Velasquez Perdomo, Germán Velasquez Perdomo, Eder Aguilar Aritas, Nelson Callejas Peña, Eduardo Montano Fernández, and Jose Cárcamo who were added as Plaintiffs by way of an Amended Complaint on November 16, 2017. *See* [Doc. No. 25]. On December 22, 2017, the Court held a hearing on Defendants' Motion to Strike the Seven Additional Plaintiffs from the Amended Complaint. The Court denied that motion without prejudice to any future motions to sever claims for trial or in limine evidentiary motions. [Doc. No. 35].

invasion," ostensibly in search of a particular person, and after completing that search without finding that person, Defendants arrested six of these seven Plaintiffs,[4] who were taken to an ICE facility where they were detained for approximately ten hours. *Id.* ¶¶ 31, 49, 51. They were also served with a Notice to Appear dated February 8, 2017 "at a time and place to be set." [Doc. No. 39-3] ("Defs.' Mem. in Support, Ex. 3").

The remaining two Plaintiffs, Mynor Tun-Cos and Jose Saput, allege that during an early morning February 17, 2017 encounter in Annandale, Virginia, Defendants unlawfully stopped them in their vehicle, asked for and received identification,[5] and then demanded a search of Saput's nearby apartment to find "the Houx-Hernandez brothers." Amend. Compl. ¶¶ 55-62. Once there, Defendants searched the apartment and after completing the search without locating the Houx-Hernandez brothers, arrested these two Plaintiffs and took them to an ICE detention facility in Lorton, Virginia in an unmarked van. *Id.* ¶¶ 62-63, 65, 67. They were subsequently released with instructions to return for periodic check-ins with ICE officials. *Id.* ¶ 67.

All Plaintiffs assert two *Bivens* claims – one for violation of Plaintiffs' Fourth Amendment rights, claiming that they were illegally stopped and their homes illegally searched, and one for violation of the Plaintiffs' equal protection rights under the Fifth Amendment, claiming that they were targeted for illegal searches because of their Latino ethnicity. *Id.* ¶¶ 1-4. Defendants move to dismiss the Amended Complaint on the grounds that under Section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1252, the Court lacks subject matter jurisdiction as to the claims of all Plaintiffs except Cárcamo because of the pending immigration removal proceedings against those Plaintiffs. *See* 8 U.S.C. §1252(b)(9). Alternatively, Defendants seek dismissal of the Amended Complaint against all Plaintiffs on the grounds that

---
[4] Plaintiff Cárcamo was the only Plaintiff present during this encounter who not arrested and taken to an ICE facility. Amend. Compl. ¶ 49.
[5] Identification was provided by the Plaintiffs but not another occupant.

2

the *Bivens* remedy should not be extended to the constitutional claims asserted in this action; and that in any event, they are entitled to qualified immunity.

Upon consideration of the Motion, the memoranda and exhibits in support thereof and in opposition thereto, the arguments of counsel at the January 26, 2018 hearing, and for the reasons stated below, the Court concludes that (1) it has subject matter jurisdiction over the Plaintiffs' *Bivens* claims; (2) Plaintiffs have stated cognizable *Bivens* claims, as those claims are against persons properly considered federal law enforcement officers under circumstances that sufficiently approximate those within the recognized contours of that remedy; and (3) Defendants are not entitled to qualified immunity at this time with respect to those claims, as Plaintiffs have sufficiently alleged clear violations of a known constitutional right.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a court's subject matter jurisdiction in an action as an affirmative defense. A party may present a Rule 12(b)(1) motion by contending either that a complaint fails to allege facts upon which subject matter jurisdiction can be based or that the jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction has been challenged, plaintiff, as the party asserting jurisdiction, has the burden of proving that subject matter jurisdiction does in fact exist. *Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). When subject matter jurisdiction is challenged on the grounds that the complaint fails to allege facts sufficient to establish subject matter jurisdiction, "all the facts alleged in the complaint are assumed true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* The Court is also required to regard the pleadings' allegations as evidence on

the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Adams*, 697 F.2d at 1219; *Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). If a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiffs complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

### III. ANALYSIS

Defendants move to dismiss this action on the grounds that the (1) INA has eliminated the Court's subject matter jurisdiction over all of Plaintiffs' constitutional claims except those of Plaintiff Cárcamo; (2) the Court should not extend the *Bivens* remedy to the constitutional claims against these Defendants, given the context and the special factors and considerations related to that context; and (3) in any event, Defendants are entitled to qualified immunity.

## A. The Court has subject matter jurisdiction over Plaintiffs' *Bivens* claims.

Removal proceedings are pending against all Plaintiffs but Cárcamo; and Defendants contend that in light of those proceedings the Court does not have jurisdiction over these Plaintiffs' *Bivens* claims.

Section 242 of the INA, 8 U.S.C. § 1252, contains two provisions that restrict a district court's jurisdiction. Section 1252(a)(5) assigns "sole and exclusive jurisdiction" to the federal courts of appeals for judicial review of an order of removal.[6] Section 1252(b)(9), governing the "Consolidation of Questions for Judicial Review," provides in pertinent part that "with respect to review of an order of removal under subsection (a)(1),[7] . . . all questions of law and fact, including the interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).[8] The issue here is whether "the questions of law and fact" embodied in Plaintiffs' Fourth and Fifth Amendment *Bivens* claims "aris[e] from any action taken or proceeding brought to remove [Plaintiffs] from the United States." *See* 18 U.S.C. § 1252(b)(9).

---

[6] Section 1252(a)(5) provides in pertinent part as follows:
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate **court of appeals** in accordance with this section shall be the **sole** and **exclusive** means for **judicial review of an order of removal** entered or issued under any provision of this chapter . . . . (emphasis added).

[7] Section 1252(a)(1) provides in pertinent part that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28 [titled Orders of Federal Agencies; Review] . . . ."

[8] Section 1252(b)(9) provides as follows:
**(b) Requirements for review of orders of removal** With respect to review of an order of removal under subsection (a)(1), the following requirements apply:

* * *

(9) Judicial review of **all questions of law and fact**, including the interpretation and application of constitutional and statutory provisions, **arising from any action taken or proceeding brought to remove an alien** from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 or Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact. (emphasis added).

In *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court considered the scope of § 1252(b)(9). The Court explained that "[Section 1252(b)(9)'s] purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals, but it applies only 'with respect to review of an a order of removal under subsection (a)(1).'" *St. Cyr*, 533 U.S. at 313 (alterations omitted) (quoting 8 U.S.C. § 1252(b)(9)).[9]

Applying the reasoning of *St. Cyr*, the lower courts have concluded that § 1252(b)(9) does not apply to a variety of claims that do not challenge or implicate the validity of a final order of removal (whether or not yet issued). For example, in *Singh v. Gonzales*, 499 F. 3d 969, 978 (9th Cir. 2007), the Ninth Circuit concluded that § 1252(b)(9) did not deprive the district court of jurisdiction over an ineffective assistance of counsel claim presented within a habeas action, since the relief obtainable, if successful, was limited to restarting the 30 day period to appeal a final order of removal to the court of appeals, rather than invalidating an order of removal.[10] The Third and Eleventh Circuits have likewise concluded that § 1252(b)(9) does not apply where, rather than challenge an order of removal, the challenge is based on there being *no* order of removal. *See Chehazeh v. U.S. Atty. Gen.*, 666 F.3d 118, 131 (3d Cir. 2012) ("[T]he Supreme Court has noted that § 1252(b)(9) is subject to limitations of §1252(b), and therefore,

---

[9] In *St. Cyr*, the Court considered whether the Court had subject matter jurisdiction over a criminal habeas petition by an alien who challenged his removability without the opportunity for a waiver of inadmissibility at the discretion of the Attorney General. Distinguishing between "judicial review" and "habeas review," the Court concluded that it had subject matter jurisdiction. *St. Cyr.*, 533 U.S. at 313. Congress subsequently amended § 1252 (b)(9) in the REAL ID Act by adding language that explicitly included habeas petitions within its scope. Real ID Act of 2005, Pub.L. 109–13, 119 Stat. 231. That amendment, however, did not affect the basis for the Court's conclusion that § 1252(b)(9) applies only to a review of an a order of removal under subsection (a)(1). *See Singh v. Gonzales*, 499 F. 3d 969, 978 (9th Cir. 2007) ("The language added by the REAL ID Act does nothing to change or undermine that analysis [in *St. Cyr*]."); *Chezazeh v. Attorney General of the United States*, 666 F.3d 118, 132 (11th Cir. 2012) ("Although *St. Cyr* issued prior to the REAL ID Act, the REAL ID Act did not modify §1252(b) or the instruction that §1252(b)(9) applies only [w]ith respect to review or an order of removal under section (a)(1).") (citations omitted) (alteration in original).

[10] In reaching that conclusion, the court noted that according to the legislative history § 106 of the REAL ID Act "'would not preclude habeas review over challenges to detention that are *independent of challenges to removal orders*. Instead, the bill would eliminate habeas review *only over challenges to removal orders.*'" *Singh*, 499 F. 3d at 978 (quoting H.R.Rep. No. 109-72, at 175, 2005 U.S.C.C.A.N. 240, 299).

'applies only with respect to review of an order of removal under subsection (a)(1).'") (quoting *St. Cyr*, 533 U.S. at 313) (alterations omitted); *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("Because we find that [petitioner] does not challenge a final administrative order of removal or seek review of a removal order, neither section 106(c) nor section 1252(a)(5) apply to this case.") (internal quotation marks omitted). To the extent that courts have concluded that claims not directly challenging an order of removal are nevertheless within the scope of § 1252(b)(9), it has been with respect to claims, such as a right to counsel claim, that affect centrally the integrity of the removal proceedings. *See, e.g., Aguilar v. United States*, 510 F.3d 1, 13 (1st Cir. 2007); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

In *Aguilar*, the First Circuit considered in depth the scope of § 1252(b)(9). On the one hand, it rejected the contention that § 1252(b)(9) applies only to "singular orders of removal or to removal proceedings simpliciter" and therefore does not apply to claims based on actions that occurred before the institution of any formal removal proceedings. *Aguilar*, 510 F.3d at 9. On the other hand, it emphasized that § 1252(b)(9) is not "limitless in its scope." *Id.* at 10. The Court of Appeals recognized that while "[t]he words 'arising from' do not lend themselves to precise application, . . . those words are not infinitely elastic" and "cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien." *Id.* at 10. (internal citations omitted). Overall, it concluded that "Congress's choice of phrase suggests it did not intend § 1252(b)(9) to sweep within its scope claims with only a remote or attenuated connection to the removal of an alien." *Id.* "Courts consistently have recognized that the term 'arising from' requires more than a weak or tenuous connection to a triggering event." *Id.* (citations omitted). Noting, as the Ninth Circuit did in *Singh*, that Congressional intent, as reflected in legislative history, was to create an exception for claims "independent" of removal,

7

the First Circuit characterized § 1252(b)(9) as a "judicial channeling provision, not a claim – barring one." *Id.* at 11. The First Circuit therefore concluded that "'arising from' in section 1252(b)(9) . . . exclude[s] claims that are independent of, or wholly collateral to, the removal process. Among others, claims that cannot effectively be handled through the available administrative process fall within that purview." *Id.* It also found relevant in determining the scope of § 1252(b)(9) whether its application would "foreclose all meaningful judicial review." *Id.* at 14 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994) (internal quotation marks omitted)). With these principles in mind, the First Circuit concluded that § 1252(b)(9) deprived the district court of jurisdiction over a right to counsel claim since that claim was "part and parcel of the removal proceeding itself." *Id.* at 13 ("So viewed, an alien's right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned."). In short, the First Circuit viewed the right to counsel claim as inseparable from the validity of any order of removal that might issue from that proceeding. *Id.* at 13-14. It concluded otherwise, however, with respect to the plaintiffs' Fifth Amendment substantive due process claims based on the treatment of their minor children.[11] *Id.* at 19. It also cited with approval its earlier decision that challenges to the legality of detention are not barred by § 1252(b)(9) and surmised that constitutional challenges regarding the availability of bail would likewise fall outside that section's reach. *Id.* at 12.

In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court recently considered how to determine under § 1252(b)(9) whether a legal question "aris[es] from any action taken or proceeding brought to remove an alien from the United States." Considering that issue within the context of a *Bivens* claim challenging an alien's detention during immigration removal proceedings without the opportunity for a bail hearing, a majority of the Court concluded that

---

[11] The Court dismissed these claims, however, for failure to state a claim. *Id.* at 24.

8

§ 1252(b)(9) did not deprive the district court of jurisdiction over those claims, *albeit* on different rationales. Echoing but not citing the decision in *St. Cyr*, three justices (Justices Ginsburg, Breyer, and Sotomayor), in an otherwise dissenting opinion, concluded that § 1252(b)(9) did not apply because it "by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(b)(9)].'" *Id.* at 876 (Breyer, J., dissenting) (alteration in original) (quoting 8 U.S.C. § 1252(b)).

In Part II of the Court's plurality opinion, two other justices (Chief Justice Roberts and Justice Kennedy) concluded that § 1252(b)(9) did not deprive the Court of jurisdiction based on essentially a causation analysis. *See id.* at 839-41. In that regard, the plurality opinion "assume[d] for the sake of argument that the actions taken [to detain without a bail hearing] . . . constitute 'actions taken to remove them from the United States'" and with that assumption, identified the dispositive issue as "whether the legal questions that we must decide 'arise from' the actions taken to remove these aliens." *Id.* at 840 (alterations omitted) (quoting 8 U.S.C. § 1252(b)(9)). The plurality opinion conceded that the legal question could be viewed in that fashion "in the sense that if those actions had never been taken, the aliens would not be in custody at all." *Id.* It rejected, however, that "expansive interpretation" because "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* Moreover, such an "expansive interpretation of § 1252(b)(9) would lead to staggering results[,]" including eliminating any review at all since "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving the detainee of any meaningful chance for judicial review." *Id.* Under the plurality opinion, the issue is not whether absent removal proceedings, the alien would have been subjected to the challenged

conduct but whether the specific claims at issue, i.e., "the legal questions" in the case, "arise from" the specific actions taken to remove the alien.[12] Overall, the plurality opinion concluded that "it was not necessary for us to attempt to provide a comprehensive interpretation. For present purposes, it is enough to note that [the detained aliens] are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 841.

In a third opinion, Justice Thomas, joined by Justice Gorsuch, concluded that § 1252(b)(9) *did* deprive the Court of jurisdiction, since even construing § 1252(b)(9) narrowly, "detention *is* an 'action taken to remove' an alien." *Id.* at 855 (Thomas, J.) (alterations omitted) (quoting 18 U.S.C. §1252(b)(9)). He also considered misplaced the plurality's concerns over barring claims "far afield from removal" since "[u]nlike detention during removal proceedings, those actions [that the plurality viewed as too remote] are neither congressionally authorized nor meant to ensure that an alien can be removed. Thus, my conclusion that § 1252(b)(9) covers an alien's challenge to the *fact* of his detention (an action taken in pursuit of the lawful objective of removal) says nothing about whether it also covers claims about inhumane treatment, assaults, or negligently inflicted injuries *during* detention (actions that go beyond the Government's lawful pursuit of its removal objectives)." *Id.*[13]

---

[12] Within the context of the legal questions presented in *Jennings*, the plurality opinion articulated this causation differentiation as follows: "the applicability of § 1252(b)(9) turns on whether the *legal questions* that we must decide *arise* from the actions taken to remove these aliens." *Jennings*, 138 S. Ct. at 840 (emphasis added). There, the plurality opinion concluded that the legal questions related to the decision not to afford a bail hearing after detention were "too remote from the actions taken to fall within the scope of § 1252(b)(9)." *Id.* Under this analysis, it would appear that the plurality opinion in substance incorporates concepts that in other contexts recognize the difference between "but-for transaction causation" (i.e., absence removal proceedings, the alien would not have been subjected to the challenged conduct) and "loss causation" (i.e., the challenged conduct issues directly out of some action necessary to the process of removing an alien).

[13] Because his analysis is also premised on a sufficiently direct link to the removal process, Justice Thomas' analysis departs from the plurality opinion not so much in its methodology but rather in its assessment concerning how

Here, Plaintiffs claim that their Fourth and Fifth Amendment rights were violated when certain of the Plaintiffs were illegally targeted and stopped and their homes illegally invaded. Based on those allegations, they are seeking damages. They "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 841. Likewise, they are not challenging conduct that is "congressionally authorized nor meant to ensure that an alien can be removed." *Id.* at 855 (Thomas, J., concurring in part). Rather, they are challenging "actions that go beyond the Government's lawful pursuit of its removal objectives." *Id.* While the challenged conduct arguably would not have happened absent the institution of removal proceedings, Defendants' alleged violations of Plaintiffs' Fourth and Fifth Amendment rights are not "a direct link to, and . . . inextricably intertwined with, the administrative process that Congress so painstakingly fashioned" or "part and parcel of the removal proceeding itself." *Aguilar, supra* at 13. Two Plaintiffs have raised in substance their Fourth and Fifth Amendment claims in their removal proceedings for the purpose of suppressing certain evidence. *See* Defs.'s Ex. 1; Defs.'s Ex. 2.[14] But simply because the Defendants' conduct may have consequences within the removal proceedings does not equate their claims with those that "arise from" an action or proceeding to remove an alien. Further, the legal question to be considered during the removal proceedings in

---

directly related the bail hearing was to an action necessary for the authorized purpose of removing an alien, i.e., detention. *See Jennings*, 138 S. Ct. at 853-59 (Thomas, J.).

[14] *See* Defs.' Ex. 1 ("Tun-Cos Mot. to Suppress Evid. & Term. Procs., at 7-12; Defs.' Ex. 2 ("Saput Mot. To Suppress Evid. & Term. Procs.," at 7-12 to Suppress Evidence and Terminate Proceedings"). Specifically, Plaintiffs Jose Saput and Mynor Tun-Cos moved for suppression of evidence obtained as a result of Defendants' unlawful seizure, interrogation, and detention of Plaintiffs, contending Defendants had neither reasonable suspicion to justify a seizure nor reasonable suspicion to interrogate them and that Defendants' actions were based solely on Plaintiffs race, ethnicity, or perceived national origin. Defs.'s Ex. 1, 2; Defs.' Ex. 2, 2.; *cf.* Am. Compl.¶ 3 ("Defendant ICE agents violated Plaintiffs' clearly established constitutional rights by detaining them at length without a reasonable, articulable suspicion" that Plaintiff had violated any law but rather Defendants conducted the unlawful searches and seizures on the basis Plaintiffs "appeared to be of Latino race or ethnicity.").

connection with the two Plaintiffs' motion for suppression is somewhat different than under *Bivens*, as reflected by the legal standards applicable to those respective claims[15] as well as Plaintiffs' request for damages against ICE agents sued in their individual capacity. In short, Plaintiffs' success or lack of success in this action will have absolutely no effect on the removal proceedings, which cannot in any event grant Plaintiffs the relief they seek. For all the above reasons, Plaintiffs' claims are outside the scope of § 1252(b)(9).[16]

### B. Plaintiffs have adequately alleged a plausible *Bivens* claim.

Defendants alternatively seek dismissal on the grounds that the *Bivens* remedy Plaintiffs assert has not been recognized by the Supreme Court under the circumstances of this case and an extension of *Bivens* in this case is unwarranted under established jurisprudence.

The Supreme Court recently outlined the following analysis for determining whether a claim arises in a new *Bivens* context:

> If the case is different in a meaningful way from previous Bivens cases decided by this Court, the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusions by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

---

[15] Plaintiffs' motion to suppress in their immigration proceedings will be assessed by an "egregiousness" standard, *see Yanez-Marquez v. Lynch*, 789 F.3d 434, 450 (4th Cir. 2015) ("the exclusionary rule applies in removal proceedings to egregious violations of the Fourth Amendment"); whereas, Plaintiffs' Fourth Amendment claims will be assessed under the standard of reasonableness. *See INS v. Delgado*, 466 U.S. 210, 215 (1984); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

[16] In concluding that § 1252(b)(9) does not deprive the Court of jurisdiction over the Plaintiffs' claims, the Court joins other district courts that have uniformly reached the same conclusion with respect to comparable claims. *See, e.g., Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 123 (D. Conn. 2010) (finding jurisdiction even with the existence of a final order since constitutional claims did not arise out of the order of removal); *see also Escobar v. Gaines*, No. 3-11-0994, 2014 WL 4384389, at *2 (M.D. Tenn. Sept. 4, 2014) (finding court's jurisdiction not stripped by § 1252(b)(9) over plaintiffs' *Bivens* claims).

12

*Ziglar v. Abbassi*, 137 S. Ct. 1843, 1859-60 (2017). In determining whether a *Bivens* remedy should be recognized in that case, the Court in *Abbassi* compared the respondents' claims[17] to already recognized *Bivens* claims[18] and noted that a new context arises in cases where "even a modest extension" exists. *Id.* at 1864.

The alleged conduct in this case has the recognizable substance of Fourth Amendment violations. Nevertheless, Defendants are ICE agents, rather than traditional law enforcement officers, federal workplace supervisors, or prison officials and were purporting to operate under a different "statutory or other legal mandate" than the officials outlined in the "traditional" *Bivens* claims referenced in *Abbassi*. For these reasons, the Court assumes that this case presents a "modest extension" in a "new context" for the application of a *Bivens* remedy and will therefore determine whether "(1) Congress has not already provided an exclusive statutory remedy; (2) there are no 'special factors counseling hesitation in the absence of the affirmative action by Congress; and (3) there is no 'explicit congressional declaration' that money damages not be awarded." *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000) (quoting *Bivens*, 403 U.S. at 396–97).

Defendants do not contend that Congress has already provided an exclusive statutory remedy for Plaintiffs' constitutional claims or that there is an "explicit congressional declaration that money damages not be awarded." The issue then reduces to whether any "special factors" counsel against extending an implied right of action within the context of this case. As identified in *Abbassi*, special factors include, among others, whether Plaintiffs' claims are the "proper

---

[17] At issue in *Abbassi* were claims challenging the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy formulated in response to a terrorist attack. *Abbassi*, 137 S. Ct. at 1860. The Supreme Court concluded that those claims were significantly different and therefore a "new context" than that in which *Bivens* had been previously applied. *Id.*

[18] The Supreme Court referenced "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." (citing *Davis v. Passman*, 442 U.S. 228 (1979), *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and *Carlson v. Green*, 446 U.S. 14 (1980)).

vehicle for altering an entity's policy," *Abbassi*, 137 S. Ct. at 1860; whether Plaintiffs' challenges raise "separation-of-powers" concerns, *id.* at 1857 (internal quotation marks omitted); and whether Congress's interest has been "frequent and intense[,]" *id.* at 1862 (internal quotation marks omitted). Based on all the facts and circumstances involved with Plaintiffs' claims, there are no "special factors" that counsel against recognizing a *Bivens* remedy for the constitutional violations alleged in this case.

First, Plaintiffs are not challenging an entity's policy.[19] Rather, they are claiming straight-forward violations of their Fourth and Fifth Amendment rights based the Defendants' conduct. Moreover, while Defendants are ICE agents, they nevertheless fall within the broad category of federal law enforcement officers, whose conduct raises the same issues and concerns as in *Bivens*.[20] Second, Plaintiffs' claims do not raise the same separation-of-power concerns that in *Abbassi* counseled against the recognition of a *Bivens* remedy. Lastly, Congress has not provided an explicit remedy for Plaintiffs' claims, nor has it precluded damages. In fact, the Supreme Court in *Bivens* itself found significant that there was "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages for the agents." *See, e.g., Bivens*, 403 U.S. at 397.[21] Defendants argue that Congress's intent to preclude a *Bivens* damages remedy can be found in its failure to provide for an explicit damages remedy in the INA, while otherwise "aggressively" legislating in the immigration area. However, while Congress can preclude a lesser remedy than a *Bivens* action, here Congress has provided no remedy whatsoever. Congress's silence in this context does not reliably reflect any

---

[19] Defendants contend otherwise, based on the reference to President Trump's immigration policy in the original Complaint. That reference has been eliminated in the superseding Amended Complaint, which does not base Plaintiffs' claims on any such policy. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("an amended pleading ordinarily supersedes the original and renders it of no legal effect") (internal quotation marks omitted).

[20] In this regard, Plaintiffs allege that during the alleged confrontations, some of the Defendants repeatedly identified themselves as "the police." *See e.g.,* Am. Compl. ¶¶ 21, 22.

Congressional intent to preclude a *Bivens* damages remedy, particularly given the long standing judicial recognition of a *Bivens* remedy for the types of Fourth and Fifth Amendment claims asserted in this case. For these reasons, there are no special factors that would counsel against a *Bivens* remedy for Plaintiffs' claims.

### C. Defendants are not entitled to Qualified Immunity.

The doctrine of qualified immunity shields government officials from civil liability when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether the invocation of qualified immunity is appropriate therefore requires courts to assess whether there was a violation of a constitutional right and whether the "right in question" is one that is "'clearly established.'" *Vance v. Rumsfeld*, 701 F.3d 193, 197 (4th Cir. 2012) (quoting *Pearson*, 555 U.S. at 243). Whether a "clearly established" right has been violated is to be determined within the specific context of the case and depends on "[whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). Further, government officials are entitled to qualified immunity in cases where a plaintiff does not "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Defendants claim that they are entitled to qualified immunity in their personal capacities on the grounds that (1) Plaintiffs Saput and Tun Cos fail to allege facts that make plausible that Defendants committed a clearly established Fourth Amendment violation during the February 17, 2017 incident; (2) the remaining Plaintiffs fail to allege with the required specificity each

15

Defendant's involvement in the February 8, 2017 incident; and (3) all Plaintiffs have failed to adequately plead a violation of the Fifth Amendment.

### 1. Plaintiffs Saput and Tun Cos sufficiently allege "clearly established" violations of the Fourth Amendment during the February 17, 2017 incident.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Defendants concede for the purposes of the Motion that an investigatory stop occurred, but that it was not unreasonable and therefore was not constitutionally infirm. At a minimum, Defendants contend that under the circumstances alleged, they did not violate a known, clearly established constitutional right.

Under the Fourth Amendment reasonableness analysis, law officials "may initiate a brief investigatory stop if the officer had reasonable suspicion to believe that 'criminal activity may be afoot.'" *United States v. Griffin*, 589 F.3d 148, 152 (4th Cir. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity" and must be limited to satisfy the officer's suspicion. *United States v. Cortez*, 449 U.S. 411, 417 (1981) (citations omitted); *see also Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The Amended Complaint alleges facts sufficient to make plausible that Fourth Amendment violations occurred. As alleged, Defendants pulled over Plaintiffs Saput and Tun Cos based on their ethnicity and without reasonable suspicion that either was engaged in criminal activity, and then engaged in what Plaintiffs essentially allege was a pretextual investigation and search based on their purporting to search for the Houx-Hernandez brothers. *See* Am. Compl. ¶¶ 55, 61, 63, 79-81; *see also United States v. Sundiata*, 3 F. Supp. 2d 682, 686 (E.D. Va. 1998) ("[R]ace is not a proper basis for an investigatory stop . . . ."). Based on the allegations, these Plaintiffs have

alleged facts that make plausible that Defendants lacked an "objective manifestation" of illegality when they stopped and questioned these Plaintiffs and violated a "clearly established" right by seizing and detaining these Plaintiffs on the account of their race.

2. <u>Plaintiffs sufficiently allege with specificity each Defendants' involvement in the February 8, 2017 incident.</u>

Plaintiffs have alleged at this stage each Defendants' involvement with a sufficient level of factual specificity to give "fair notice" of the claims asserted against each individual and the conduct relied on for those claims.[22] Plaintiffs allege that all Defendants participated in either the February 8, 2017 or February 17, 2017 incidents; and to the extent the Amended Complaint fails to allege Defendants' full names as to each incident, they have been identified based on the information reasonably available to the Plaintiffs and with sufficient specificity to provide notice to each Defendant of the claims asserted.[23] *See* Am. Compl. ¶¶ 2, 18. For these reasons, Defendants are not entitled to qualified immunity on the ground that the Plaintiffs have failed to state with specificity each Defendants' involvement.

3. <u>All Plaintiffs have adequately alleged Fifth Amendment violations.</u>

Plaintiffs have also adequately pleaded that they were discriminated against on the basis of race or ethnicity. The law is well settled that the equal protection component of the Due Process Clause of the Fifth Amendment "prohibit[s] the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). Specifically, Plaintiffs allege that Defendants intentionally "targeted, questioned, and seized Plaintiffs" because of their "race, ethnicity,

---

[22] A complaint satisfies the notice requirement of the pleading requirement if it "'give[s] the defendant[s] fair notice of what the ... claim is on the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)).

[23] Plaintiffs allege that they have identified the Defendants as they appear on their I-213 form. Am. Comp. ¶ 18, n. 1 ("A Form I-213 is an official record routinely prepared by an immigration officer at the time of the initial processing of an individual suspected of being unlawfully present in the United States.").

17

and/or perceived national origin." Am. Compl. ¶ 85. Plaintiffs' claims are supported by their factual allegations that Defendants continued to detain them even though none of the Plaintiffs resembled the suspects they were looking for "other than that they all appear[ed] to be men of Latino race or ethnicity." *Id.* ¶ 64. As to Plaintiff Cárcamo, one Defendant asked if there were "other Spanish families" living in the neighborhood, as the Defendants questioned, searched, and seized Plaintiffs without reasonable, articulable suspicion that they had violated the law. *Id.* ¶ 77. Based on the allegations, Plaintiffs have alleged facts sufficient to make plausible their claims of Fifth Amendment violations.

## IV. CONCLUSION

For the reasons stated above, the Court has subject matter jurisdiction as to all claims by all Plaintiffs, Plaintiffs have stated a *Bivens* claim against the Defendants, and Defendants are not entitled to qualified immunity based on the allegations of the Amended Complaint. Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Leave to File Notice of Supplemental Authority Regarding Defendants' Motion to Dismiss. [Doc. No. 47] be, and the same hereby is, GRANTED; and it is further

ORDERED that Defendants' Motion to Dismiss the First Amended Complaint [Doc. No. 38] be, and the same hereby is, DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 5, 2018